# **EXHIBIT A**

# GPI, LLC

*Franchise Administrator for*



## GEESE POLICE

P.O. BOX 656 • HOWELL, NJ 07731

PHONE: 732-938-9093 • FAX: 732-938-9092

February 8, 2018

**VIA EMAIL (cathy@geesepoliceloudoun.com)**
**AND U.S. CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Doggone Geese, Inc.
d/b/a Geese Police of Virginia
P.O. Box 2608          **REDACTED**
Leesburg, VA  20175

Attn:  Cathy Fiddler Benedict

Re:   Franchise Agreement by and between GPI, LLC ("Franchisor") and
      Doggone Geese, Inc. ("Franchisee"), as amended, and Standard Addendum to
      the GPI, LLC Renewal Franchise Agreement dated August 31, 2009 (together,
      the "Franchise Agreement")

Dear Ms. Benedict:

Reference is made to the Franchise Agreement. All capitalized terms used in this letter without definition have the meanings given them in the Franchise Agreement.

Sections 16.2 and 16.2.3 of the Franchise Agreement provide, in part, as follows:

"16.2   Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable, specialized training and confidential information, including, without limitation, information regarding the operational, sales, and promotional methods and techniques of Franchisor and the System. Franchisee covenants that during the term of this Agreement, except as otherwise approved in writing by Franchisor, Franchisee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or legal entity:

16.2.1  Divert or attempt to divert any present or prospective business or customer of Franchisor or any other business operating under the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System;

Doggone Geese, Inc.
February 8, 2018
Page -2-

    16.2.3 Own, maintain, operate, engage in, be employed by, provide any assistance to, or have any interest in (as owner or otherwise) any business that: (a) offers products or services which involve the inhabitation of property by, and control of, birds and waterfowl; and (b) is, or is intended to be, located at or within:

      16.2.3.1  the county or municipality in which the Approved Location is located; or

      16.2.3.2  the Protected Territory; or

      16.2.3.3  one hundred fifty (150) miles of the Approved Location; or

      16.2.3.4  one hundred fifty (150) miles of any business operating under the Proprietary Marks."

  Enclosed is evidence that your affiliate, and principal owner, Cathy Benedict, is selling border collies for the purpose of goose control. This evidence is clear and is not subject to dispute. The evidence demonstrates that Ms. Benedict is engaged in a business that: "(a) offers products or services which involve the inhabitation of property by, and control of, birds and waterfowl; and (b) is . . . located at or within the county or municipality in which the Approved Location is located and within the Protected Territory . . ."

  Sections 14.2 and 14.2.7 of the Franchise Agreement provide, in part, as follows:

    "14.2 Upon the occurrence of any of the following events of default, Franchisor may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the provision of notice to Franchisee (in the manner provided under Section 21 hereof):

      14.2.7 If Franchisee fails to comply with the covenants in Section 16.2 hereof or fails to obtain execution of the covenants required under Sections 9.2 or 16.7 hereof;"

  Thus, the conduct of business involving the sale of border collies for goose control in Leesburg, Virginia is a violation of Section 16.2.3 of the Franchise Agreement. That violation creates an event of default that, under Section 14.2.6, provides Franchisor with the right to terminate the Franchise Agreement immediately without any opportunity to cure the default.

    **<u>Therefore, please be advised that the Franchise Agreement is hereby terminated effective immediately.</u>**

Doggone Geese, Inc.
February 8, 2018
Page -3-

As a result, Section 15 – <u>OBLIGATIONS UPON TERMINATION OR EXPIRATION</u>, becomes applicable to you. Section 15 provides as follows:

"Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

15.1   Franchisee shall immediately cease to operate the Franchised Business, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor.

15.2   Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures, and techniques associated with the System; and the Proprietary Mark "Geese Police" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System. In particular, Franchisee shall cease to use, without limitation, all signs, advertising materials, displays, stationery, forms, products, and any other articles which display the Proprietary Marks.

15.3   Franchisee shall take such action as may be necessary to cancel any assumed name registration or equivalent registration obtained by Franchisee which contains the mark "Geese Police" or any other Proprietary Marks, and Franchisee shall furnish Franchisor with evidence satisfactory to Franchisor of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

15.4   Franchisee shall make such modifications or alterations to the Premises of the Franchised Business (including, without limitation, the changing of, and the assigning to Franchisor of, the telephone number) and to any vehicles used in connection with the Franchised Business immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of the Premises and any such vehicles of the Franchised Business from that of the premises and the vehicles of a franchised business under the System, and shall make such specific additional changes thereto as Franchisor may reasonably request for that purpose. In the event Franchisee fails or refuses to comply with the requirements of this Section 15.4, Franchisor shall have the right to enter upon the Premises, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes to the Premises and to any vehicles as may be required, at the expense of Franchisee, which expense Franchisee agrees to pay upon demand.

15.5   Franchisee agrees, in the event it continues to operate or subsequently begins to operate any other business, not to use any reproduction, counterfeit, copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which, in Franchisor's sole discretion, is likely to cause confusion, mistake, or deception, or which, in Franchisor's sole discretion, is likely to dilute Franchisor's rights in and to the Proprietary Marks. Franchisee further agrees not to utilize any designation of origin, description, or representation (including but not limited to reference to the Franchisor, the System, or the Proprietary Marks) which, in

Doggone Geese, Inc.
February 8, 2018
Page -4-

Franchisor's sole discretion, suggests or represents a present or former association or connection with Franchisor, the System, or the Proprietary Marks.

15.6   Franchisee shall promptly pay all sums owing to Franchisor and its affiliates. In the event of termination for any default of Franchisee, such sums shall include all damages, costs, and expenses, including reasonable attorneys' fees, incurred by Franchisor as a result of the default, which obligation shall give rise to and remain, until paid-in-full, a lien in favor of Franchisor against any and all of the personal property, furnishings, equipment, signs, fixtures, and inventory owned by Franchisee and used in the operation of the Franchised Business.

15.7   Franchisee shall immediately deliver to Franchisor the Customer List relating to the Franchised Business, which are acknowledged to be the property of Franchisor, and shall retain no copy or record of any such customer lists. At the option of Franchisor, Franchisee shall assign to Franchisor all of the contracts with customers of the Franchised Business. In addition, Franchisee shall immediately deliver to Franchisor the Manual and all other records, correspondence, and instructions containing confidential information relating to the operation of the Franchised Business (and any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be the property of Franchisor, and shall retain no copy or record of any of the foregoing, with the exception of Franchisee's copy of this Agreement, any correspondence between the parties, and any other documents which Franchisee reasonably needs for compliance with any provision of law.

15.8   Franchisor shall have the option, to be exercised within thirty (30) days after termination, to purchase from Franchisee (1) any or all of the dogs and vehicles used by the Franchised Business and any or all of the equipment and signs related to the operation of the Franchised Business, at fair market value or at Franchisee's depreciated book value, whichever is less and (2) any or all supplies and inventory of the Franchised Business, at Franchisee's cost or depreciated book value, whichever is less. If the parties cannot agree on the price of any such items within a reasonable time, an independent appraisal shall be conducted at Franchisor's expense, and the appraiser's determination shall be binding. If Franchisor elects to exercise any option to purchase herein provided, it shall have the right to set off all amounts due from Franchisee, and the cost of the appraisal, if any, against any payment therefor.

15.9   Franchisee shall comply with the covenants contained in Section 16.3 of this Agreement.

15.10   Upon termination of this Agreement: (i) by Franchisor following Franchisee's default; or (ii) by Franchisee prior to the end of its term without Franchisor's consent, Franchisee agrees to pay to Franchisor within fifteen (15) days after the effective date of this Agreement's termination, in addition to the amounts owed hereunder, liquidated damages equal to the present value (using the then-current 30-Year Treasury Bond rate) of the royalty fees Franchisee would have paid, calculated as the product of:

Doggone Geese, Inc.
February 8, 2018
Page -5-

      a.    The Franchised Business' average monthly Gross Sales during its most recent twelve (12) months of operation before the termination (annualized if this Agreement has been in effect less than twelve (12) months at such time), multiplied by the lesser of the number of months remaining in this Agreement had it not been terminated, or thirty-six (36); and

      b.    the six percent (6%) royalty rate.

The parties hereto acknowledge and agree that it would be impracticable to determine precisely the damages Franchisor would incur as a result of termination of this Agreement and the loss of cash flow from royalty fees due to, among other things, the complications of determining what costs, if any, Franchisor might have saved and how much the royalty fees would have grown over what would have been this Agreement's remaining term. The parties hereto consider this liquidated damages provision to be a reasonable, good faith pre-estimate of those damages and the parties acknowledge and agree that such amount does not constitute a penalty."

In addition, Section 16.3 becomes applicable to you and provides as follows:

"16.3 Franchisee covenants that, except as otherwise approved in writing by Franchisor, Franchisee shall not, for a continuous uninterrupted period of two (2) years commencing upon the date of: (a) a transfer permitted under Section 13 of this Agreement; (b) expiration of this Agreement; (c) termination of this Agreement (regardless of the cause for termination); (d) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to enforcement of this Section 16; or (e) any or all of the foregoing; either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or legal entity, own, maintain, operate, engage in, be employed by, provide assistance to, or have any interest in (as owner or otherwise) any business that: (i) involve the inhabitation of property by, and control of, birds and waterfowl; and (ii) is, or is intended to be, located at or within:

    16.3.1 the county or municipality in which the Approved Location is located; or

    16.3.2 the Protected Territory; or

    16.3.3 one hundred fifty (150) miles of the Approved Location; or

    16.3.4 one hundred fifty (150) miles of any business operating under the Proprietary Marks; provided, however, that this provision shall not apply to the operation by Franchisee of any business under the System which may be franchised by Franchisor to Franchisee."

Franchisee now has 15 days in which to cease the conduct of the Franchised Business and to perform the obligations described in Sections 15 and 16.3.

Doggone Geese, Inc.
February 8, 2018
Page -6-

The post-termination provisions of the Franchise Agreement are clear and self-explanatory. Please read Sections 15 and 16.3 carefully and perform the obligations described within the next 15 days.

At the end of the 15-day period, Franchisee must send to Franchisor evidence in the form of a sworn statement indicating that Franchisee has:

- (a) Ceased all operations of the Franchised Business;

- (b) Returned its Customer List, the Manual and all other records, correspondence, and instructions containing confidential information relating to the operation of the Franchised Business (and any copies thereof) to Franchisor;

- (c) Assigned all Franchisee's contracts with its customers to Franchisor;

- (d) Ceased all use of the Proprietary Mark "Geese Police" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System; and

- (e) Cancelled any assumed name registration or equivalent registration obtained by Franchisee which contains the mark "Geese Police" or any other Proprietary Marks;

In addition, under Section 15.10 of the Franchise Agreement, Franchisor has calculated the amount of **$18,089.53** as the liquidated damages due Franchisor. This amount must be paid to Franchisor within the same 15-day period.

In the event that you do not undertake the actions being demanded in this letter and provide sufficient evidence that you have complied with your post-termination obligations, Franchisor will take whatever lawful actions it deems necessary to protect its interests, including without limitation, filing legal action against you.

**NOTICE HAS BEEN GIVEN. PLEASE ACT ACCORDINGLY.**

Very truly yours,

David C. Marcks
Managing Member

Enclosures (photos)
cc: Lisa Groat, Manager of Franchise Operations
John R. Previs, Esquire

4813-4049-5708, v. 1



## Goosedogs In Action
Product/Service

Cathy Benedict. Goosedogs for sale in Leesburg VA for humane Canada goose control. Over 2 decades of experience
www.keepstonefarm.com/
Leesburg, Virginia







 **Goosedogs For Sale Virginia**

 Like  Follow  Share  Save

Agriculture • Leesburg, Virginia

**HOME**   POSTS   REVIEWS   VIDEOS

   



**HOME**  **POSTS**  **REVIEWS**  **VIDEOS**



**Goosedogs For Sale Virginia**
3 hrs · Instagram ·

Young Ian is exhausted after a day of herding geese, ducks and sheep at our training farm in Berryville Va **#keepstonefarm, #goosedogs #workingbordercollie #dogsofinstagram #goosedogsforsale #golf**



    



**HOME**   **POSTS**   **REVIEWS**   **VIDEOS**

 **Goosedogs For Sale Virginia**
Yesterday at 4:05 PM ·

Britt may be tiny, but so is a small amount of dynamite!! This 6 year old is full of drive for birds! **#goosedogsforsale, #golf, #dogsoffacebook, #bordercollie**



    



| )S | PHOTOS | ABOUT | COMMUNITY |



 **Goosedogs For Sale Virginia**
258 mi away

 PO Box 2608
Leesburg, Virginia                    [ Get Directions ]

 (703) 785-2803                       [ Call Now ]

 http://www.keepstonefarm.com

 About
Properly trained duck demo and goosedogs for sale for the humane control of Canada geese. We can personally deliver your dog, fly it or have you come to us

 Team Members

 Cathy Benedict                        >

