Lauren Adornetto Woods
BUCHANAN INGERSOLL & ROONEY PC
Incorporated in Pennsylvania
700 Alexander Park, Suite 300
Princeton, New Jersey, 08540
609-987-6800
Attorneys for Plaintiff,
GPI, LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GPI, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>DOGGONE GEESE, INC. AND CATHY P. BENEDICT<br><br>    Defendant. | Civil Action No.<br><br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE PURSUANT TO FED. R. CIV. P. 65** |

  Plaintiff Franchisor GPI, LLC files this Memorandum of Law in Support of Order to Show Cause Pursuant to Fed. R. Civ. P. 65 to compel Defendants to immediately comply with their post-termination obligations under the Franchise Agreement.[1]

### I. STATEMENT OF FACTS

  For over twenty years, Franchisor has been continuously engaged in the franchising of a franchise system consisting of distinctive formats, designs, specifications, methods, standards, operating procedures and guidance for Canadian goose/bird control franchises, which use highly trained working Border Collies to herd Canadian geese off a client's property (the "Franchised Business"). *See* Verified Complaint ¶ 9. With waterfowl protective statutes in place, the Franchised Business practices are one of the few means of dealing with messy Canadian geese in

---

[1] Capitalized terms used in this Motion without definition have the meanings given them in the Verified Complaint.

a lawful manner. *Id.* Since the Franchisor began franchising in 1998, Franchisor has licensed the Geese Police Marks to its franchisees for use in specific geographic areas for the term of their franchise. *Id.* ¶ 22. Franchisor also grants its franchisees the right to enjoy the benefits of using the Geese Police System and the Geese Police Trade Secrets. *Id.* Franchisees are not, however, authorized to use the Geese Police Marks, the Geese Police System or the Geese Police Trade Secrets following the expiration or termination of their franchises. *Id.* ¶ 23.

Defendant Doggone Geese has been a franchisee since 2003. *Id.* ¶ 27. Franchisor entered into a new five (5) year Franchise Agreement with Defendant Doggone Geese on or about August 31, 2009. *Id.* Defendant Benedict, as the owner of Defendant Doggone Geese, executed the Franchise Agreement and also executed a Guarantee, Indemnification and Acknowledgement under which she personally guaranteed that the obligations of Defendant Doggone Geese under the Franchise Agreement would be performed, and acknowledged and agreed, among other things, to be bound by the franchisee's obligations upon termination and to the covenant not to compete. *Id.* ¶¶ 27-28.

Defendants operated as an authorized Geese Police franchise for fourteen (14) years in the Approved Location of Leesburg Virginia and in the Protected Territory Counties of Loudoun and Clark, Virginia and the Towns of Reston and Herndon, Virginia using the Geese Police Marks, the Geese Police System and the Geese Police System. *Id.* ¶ 34. On February 8, 2018, Franchisor terminated the Franchise Agreement and the Geese Police franchise under which Defendants were operating because Defendants were breaching the in-term covenant not to compete by selling trained Border Collies from the Approved Location. *Id.* ¶¶ 38-40 & Exhibit A. Although the Franchise Agreement to which Defendants agreed has been terminated,

2

Defendants still continue to violate their post-termination obligations under the Franchise Agreement, and will continue to do, absent Court involvement. Id. ¶¶ 43-48.

## II. STANDARD FOR ISSUANCE OF PRELIMINARY INJUNCTION

Preliminary injunctions are issued under the procedures of Federal Rule of Civil Procedure 65(a). In the Third Circuit, a preliminary injunction will issue when (1) the movant has shown a likelihood that it will succeed on the merits; (2) the movant would be irreparably harmed without injunctive relief; (3) the potential harm to the movant outweighs the harm the defendant may suffer should an injunction issue; and (4) granting preliminary relief would be in the public interest. *See generally*, *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d. Cir. 2002). Franchisor is likely to succeed on the merits of its Lanham Act claims (Counts I-II of the Verified Complaint) and breach of the covenant not to compete and remaining post-termination obligation under the terminated Franchise Agreement (Counts III-IV of the Verified Complaint). Franchisor is being irreparably harmed by Defendants' unauthorized use of the Geese Police Marks and Defendants' willful conduct in continuing to operate and hold themselves out as an authorized Franchised Business in violation of the Franchise Agreement. Given that Franchisor has the right to permit use of the Geese Police Marks, Geese Police System and Geese Police Trade Secrets, and that right has been terminated, Franchisor is being substantially harmed, and will be irreparably harmed, in the absence of injunctive relief. Finally, the public has a right not to be deceived or confused by Defendants' unauthorized use of the Geese Police Marks, Geese Police System and Geese Police System in the former Approved Location of the former Franchised Business.

### III. ARGUMENT

#### A. Plaintiff Is Entitled to a Preliminary Injunction Because It Is Likely to Succeed on the Merits

##### 1. *The Lanham Act Counts*

Counts I and II of the Complaint assert claims for trademark and service mark infringement and unfair competition under the Lanham Act. Under both Section 32(1) and 43(a) of the Lanham Act, 15 U.S.C. § 1114(1) and 1125(a), a claim for infringement lies when a plaintiff establishes that: (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create or cause confusion concerning the origin of those goods and services. *See Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277 (3d Cir. 1991); *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). Proof of actual confusion, however, is not necessary; it is enough to show likelihood of confusion. *See Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1077 (9th Cir. 2006) (holding that absence of evidence of actual confusion to be "unnoteworthy").

##### a) Franchisor Owns Valid and Legally Protectable Marks

There is no colorable dispute that the Geese Police Marks are valid and legally protectable as evidenced by their registrations. *See* 15 U.S.C. § 1057(b) (certificate of registration is prima facie evidence of validity of registered mark). Franchisor satisfies the first prong of an infringement claim under Sections 32(1) and 43(a) of the Lanham Act: the Geese Police Marks are valid and legally protectable.

##### b) Likelihood of Confusion

"[L]ikelihood of confusion is inevitable when, as in this case, the identical mark is used concurrently by unrelated entities." *Opticians*, 920 F.2d at 195. *See also S & R Corp. v. Jiffy*

*Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) ("There is no question that [defendant, the terminated franchisee,] and Jiffy Lube are using the same legally protectable trademark, owned by Jiffy Lube, and that their concurrent use is highly likely to cause consumer confusion about [defendant's] affiliation with the franchise"); *Travelodge Hotels, Inc., v. Elkins Motel Associates, Inc.*, 2005 WL 2656676, at *9 (D.N.J. Oct. 18, 2005) (holding as matter of law that terminated franchisee's concurrent use of the trademark created consumer confusion).

Here, Defendant Doggone Geese, Inc. is no longer an authorized franchisee. Defendants' unauthorized use of the Geese Police Marks creates confusion concerning the origin of Defendants' unauthorized products and services and causes the consuming public to patronize a business that is not authorized by Franchisor and is no longer obligated to adhere to the Geese Police System.

*Burger King* reiterates the well-settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement. *Id.* at 1492 ("common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks"). *See also Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1566 (11th Cir. 1986). Accordingly, Defendants' failure to take reasonable and appropriate steps to disassociate itself, and its continued use of the Geese Police Marks is dispositive of the infringement issue. *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1003 (S.D. Fla. 1992). Accordingly, Franchisor is likely to succeed on the merits of its infringement claim under the Lanham Act.

    **2. *Breach of the Covenant Not to Compete in the Franchise Agreement***

      **a) New Jersey Enforces Two-Year Covenants Not to Compete**

The Franchise Agreement, at Section 25.1, provides that "this Agreement shall be interpreted and construed under the laws of the State of New Jersey" *See* Exhibit F to Verified Complaint, Section 25.1 of the Franchise Agreement. Thus, New Jersey covenant not to compete law applies.

The covenant not to compete in this case is reasonably crafted; it prohibits competition with the Franchisor in four specific areas. First, Defendants are prohibited from operating a competing business in the Approved Location (Leesburg, Virginia)[2], which is the same location from which Defendants operated the former Franchised Business. *See id.* Section 16.2.3.1 of the Franchise Agreement. Second, Defendants are prohibited from operating a competing business in the Protected Territory (Counties of Loudoun[3] and Clarke, Virginia[4] and the Towns of Reston[5] and Herndon,[6] Virginia.), which is the same geographic scope under which Defendants serviced customers of the Franchised Business. *See id.* Section 16.2.3.2 of the Franchise Agreement. Third, Defendants are prohibited from operating a competing business within 150 miles of the Approved Location (Leesburg, Virginia). *See id.* Section 16.2.3.3 of the Franchise Agreement. Finally, Defendants are prohibited from operating a competing business within 150 miles of any

---

[2] Leesburg, Virginia, is the county seat of Loudoun County, Virginia. Leesburg spans 12.4 square miles. *See* Leesburg, Virginia on Wikipedia, https://en.wikipedia.org/wiki/Leesburg,_Virginia, accessed on 4/2/2018.

[3] Loudoun County, Virginia has 516 square miles. See Loudoun County, Virginia on Wikipedia, https://en.wikipedia.org/wiki/Loudoun_County,_Virginia, accessed on 4/2/2018.

[4] Clarke County, Virginia has 176 square miles. See Clarke County, Virginia on Wikipedia, https://en.wikipedia.org/wiki/Clarke_County,_Virginia, accessed on 4/2/2018.

[5] Reston, Virginia in Fairfax County has 15.3 square miles. See Reston, Virginia on Wikipedia, https://en.wikipedia.org/wiki/Reston,_Virginia, accessed on 4/2/2018.

[6] Herndon, Virginia in Fairfax County has 4.2 square miles. See Herndon, Virginia on Wikipedia, https://en.wikipedia.org/wiki/Herndon,_Virginia, accessed on 4/2/2018.

existing Franchised Business. *See id.* Section 16.2.3.4 of the Franchise Agreement. This provision is designed to protect authorized Geese Police Franchisees from unfair competition; the seventeen authorized Geese Police Franchisees are disclosed publicly on the Franchisor's website and are located in Washington D.C. and in specific areas within twelve states (Delaware, Georgia, Illinois, Indiana. Kansas, Massachusetts, Maryland, New Jersey, New York, North Carolina, Pennsylvania and Virginia). The seventeen authorized Geese Police Franchisees are known to Defendants. Under New Jersey law, these geographic restraints are enforceable against a terminated, former franchisee.

Under New Jersey law, in order for the covenant to be enforceable, it must satisfy the *Solari*[7] reasonableness test: (1) the covenant must protect a legitimate interest of the franchisor; (2) the covenant may impose no undue hardship on the franchisee; and (3) the covenant must not impair the public interest. *Jiffy Lube Int'l v. Weiss Bros., Inc.,* 834 F. Supp. 683, 691 (D.N.J. 1993). The covenant not to compete at issue here protects the legitimate interest of the Franchisor, namely the Franchisor's goodwill. *See id* at 691("the primary characteristic of a franchise is the license given to the franchisee to trade upon and exploit the franchisor's goodwill"); *Liberty Sales Assocs., Inc. v. Dow Corning Corp.*, 816 F. Supp. 1004, 1010 (D.N.J. 1993) ("What distinguishes a franchise from an ordinary distributorship is that the goodwill inherent in the name and mark attaches to the entire business of the seller, not just the goods themselves."). As the *Weiss Bros.* court stated:

> One can view a franchise agreement, in part, as a conveyance of the franchsiors' goodwill to the franchisee for the length of a franchise. When the franchise terminated[,] the goodwill is, metaphysically, reconveyed to the franchisor. A restrictive covenant, reasonably crafted, is necessary to protect the goodwill after that reconveyance.

---

[7] *Solari Industries, Inc. v. Malady*, 264 A.2d 53 (N.J. 1970).

*Weiss Bros.*, 834 F. Supp. at 691.

Separate and apart from protecting the Franchisor's goodwill, federal courts have also held that franchisors have a legitimate interest in maintaining their customer base; s*ee Jackson Hewitt, Inc. v. Madan*, 83 Fed. Appx. 417, 419 (3d Cir. 2003) (upholding a covenant not to compete and noting that franchisor has a right to prevent its customers from being "diverted" by a former franchisee); as well as protecting existing franchisees from competition and preserving its ability to open a new franchise at or near the terminated franchisee's location. *See Athlete's Foot Marketing Assocs., LLC v. FL Consulting Inc.*, 2:06-cv-03035, Westlaw Bus. Franchise Guide (CCH) P 13615 (C.C.H.), 2007 WL 9378875 (D.N.J. May 4, 2007).

Likewise, enforcement of the covenant not to compete does not impose undue hardship upon Defendants. Two-year covenants not to compete are regularly enforced in New Jersey, including against a terminated franchisee. *See Jackson Hewitt*, 83 Fed. Appx. at 420 (enforcing two-year covenant not compete against terminated franchisee); *see also GeneraSchuhalter v. Salerno*, 653 A.2d 596, 601 (N.J. Super. Ct. 1995) (stating covenant not to compete's two-year term was a "modest imposition"); *A.T. Hudson & Co., Inc. v. Donovan*, 524 A.2d 412 (N.J. Super. Ct. 1987) (affirming trial court's enforcement of two-year covenant not to compete); *Mailman, Ross, Toyes & Shapiro v. Edelson*, 444 A.2d 75, 78 (N. J. Super. Ct. 1982) ("The duration of the covenant is but two years, a term generally held to be reasonable").

As discussed in more detail below, the covenant not to compete does not impose undue hardship on Defendants, and enforcement does not impair the public interest. *See infra* Section III.C.2. Therefore, the covenant not to compete at issue in this case is well within the strictures for enforcement under New Jersey law.

### B. Franchisor Is Entitled To A Preliminary Injunction Because It Is Suffering Irreparable Injury

#### 1. The Lanham Act Counts

Where there is a likelihood of confusion as to the use of a mark or of trade dress, it is an "inescapable conclusion" that there is irreparable harm. *Opticians*, 920 F.2d at 196-97; *accord Buca, Inc. v. Gambucci's, Inc.*, 18 F.Supp.2d 1193, 1211 (D. Kan. 1998) (indicating that presumption of irreparable injury applies if, in a trade dress infringement action, plaintiff demonstrates that consumer confusion and trade dress are strong).

Other "[g]rounds for finding irreparable injury include loss of control of reputation, loss of trade and loss of goodwill." *Opticians*, 920 F.2d at 195. The key to finding irreparable injury is a finding that the franchisor lacks control, which <u>potentially</u> might result in a damaged reputation. The Third Circuit stated:

> In *Ambassador East, Inc. v. Aced, Inc.*, 257 F.2d 79 (3d Cir. 1958), we held that a plaintiff's "mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use ...." *Id.* at 82 (quoting *Yale Elec. Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928) (opinion by Judge Learned Hand)). *See Pedi-Care, Inc. v. Pedi-A-Care Nursing, Inc.*, 656 F. Supp. at 457 (D.N.J. 1987) (where there is loss of control, "the potential exists that defendant's use of a [mark] confusingly similar to plaintiff's... mark will result in damage to plaintiff's reputation."); *Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F. Supp. at 711 ("Plaintiff's lack of ability to control the nature and quality of services provided under an infringing service mark, even if defendant matches the high quality of plaintiff's services, constitutes irreparable injury."). *See also Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982) ("the most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of defendant's goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the actions of another.") (citations omitted).

*Id.* at 195-96.

*Church of Scientology International v. The Elmira Mission of the Church of Scientology*, 794 F.2d 38 (2d Cir. 1986), cited as persuasive authority in *Opticians*, provides an excellent analysis of this issue:

> The unauthorized use of a mark by a former licensee invariably threatens injury to the economic value of the goodwill and reputation associated with the licensor's mark. As a consequence, a licensor who establishes a likelihood of confusion as to product source in a trademark infringement suit simultaneously demonstrates the requisite irreparable harm essential to obtaining a preliminary injunction.
>
> ... [I]rreparable harm exists in a trademark case when the party seeking the preliminary injunction "shows that it will lose control over the reputation of its trademark pending trial."... Control of the trademark is crucial in the licensing context because a licensor who fails to monitor its mark risks a later determination that it has been abandoned. "If a trademark owner allows licensees to depart from its quality [or other] standards, the public will be misled, and the trademark will cease to have utility as an informational device."
>
> A trademark licensor has a particular interest in controlling the use of its mark by its licensees in order to preserve the mark's quality and its continued validity ....
>
> \* \* \* \*
>
> [I]t is that loss of control which is the very thing that constitutes irreparable harm in the licensing context.
>
> \* \* \* \*
>
> [O]nce a trademark owner loses control of its mark by failing zealously to watch over its use by others -- or by not objecting to its unauthorized use -- the reputation associated with the mark is reduced. Here, there is no evidence that appellants as licensors acquiesced in defendants' unauthorized use. The evidence is the opposite. Thus, allowing defendants the opportunity to reduce the marks' reputational value and goodwill by its continued unauthorized use constitutes the irreparable harm that is requisite to the issuance of the preliminary injunction.

*Church of Scientology*, 794 F.2d at 43-44.

10

A finding of irreparable harm in this case is similarly warranted. The Geese Police Marks are its "authentic seal." *Opticians*, 920 F.2d at 195. By it, the Franchisor "vouches for the [goods and services] which bear its name." *Id.* Defendants' unauthorized use of the Geese Police Marks, the Geese Police Trade Dress and the Geese Police System interferes with Franchisor's ability to enforce the Franchised Business' operations, standards and procedures. As a result, The Franchisor's customers will be deceived into believing that the Defendants' business is an authorized Geese Police franchise when, in fact, it is not. Franchisor will suffer irreparable harm in that the loss of control over the Geese Police Marks, Geese Police Trade Dress and Geese Police System endangers the satisfaction and expectations of Franchisor's customers, dilutes the value of the franchises held by other franchisees, and inevitably will lead to the loss of trade and the loss of the goodwill associated with the Geese Police Marks. *Jiffy Lube*, 968 F.2d at 378.

A former franchisee should not continue to be entrusted with the goodwill of the Franchisor where the Franchisor is not able to monitor or enforce its standards or procedures. The goodwill perceived by the public is manifested by the Geese Police Marks, Geese Police Trade Dress and Geese Police System. A <u>former</u> franchisee is not the best, and in reality would be the worst, caretaker of the Franchisor's goodwill, particularly when the former franchisee was operating a competing business while also operating a Franchised Business. The Franchisor's reputation is determined by the goodwill developed by the franchisee under the Geese Police Marks, Geese Police Trade Dress and Geese Police System. If the former franchisee, in using the Geese Police Marks, Geese Police Trade Dress and Geese Police System, damages the goodwill in any way, the reputation of the Franchisor will suffer. By allowing the former franchisee to continue to use the Geese Police Marks, Geese Police Trade Dress and Geese

Police System without any accountability to the Franchisor, both the Franchisor and the public will suffer unless the injunction is granted. Such a result places the Franchisor's goodwill is outside of the Franchisor's control.

Pertinent in this regard is *S & R Corporation v. Jiffy Lube International, Inc.*, 968 F.2d 371 (3d Cir. 1992), a case in which the Third Circuit held that the district court erred in denying a franchisor's motion for a preliminary injunction which sought to enjoin a terminated franchisee from continuing to use its trademark after termination. In so holding, the court ruled that a dispute over termination of the franchise agreement did not preclude preliminary injunctive relief. *Id.* at 375. Accordingly, the Court should find that Franchisor will suffer, and has suffered, irreparable harm as a result of Defendants' unlawful conduct.

### 2. Breach of the Non-Competition Covenant

Courts readily have found that irreparable injury results when a former franchisee competes against a franchisor in breach of a restrictive covenant contained in the parties' franchise agreement. *See, e.g., Athlete's Foot Marketing Assocs., Inc. v. Zell Investment, Inc.*, 2000 WL 426186 at *11 (W.D. Pa. 2000); *Maaco Enters., Inc. v. Bremner*, 1998 WL 669936 at *5 (E.D. Pa. 1998); *Barmasters Bartending Sch., Inc. v. Authentic Bartending Sch., Inc.*, 931 F. Supp. 377, 386-87 (E.D. Pa. 1996); *Rita's Water Ice Franchise Corp. v. DBI Investment Corp.*, 1996 WL 165518, at *5 (E.D. Pa. 1996); *Novus Franchising, Inc. v. Taylor*, 795 F. Supp. 122, 130 (M.D. Pa. 1992); *Sparks Tune-Up, Inc. v. White*, 1989 WL 41321, at *3 (E.D. Pa. 1989).

The court in *Athlete's Foot Marketing Assocs., Inc. v. Zell Investment, Inc.*, 2000 WL 426186 (W.D. Pa. 2000) cogently set forth why a franchisor would suffer irreparable harm if the non-competition covenant (which is similar to the one at issue here) was not enforced against a former franchisee. The court stated:

> The covenant-not-to-compete set forth in the Operating Agreement is designed to prevent not only sales that might result from the prohibited competition, but primarily to prevent a disturbance in the relationship between AFMAI and its customer base, and the goodwill developed for the stores operated by AFMAI and its authorized franchisees, especially in the Pittsburgh market. The consequences of this disturbance with customer relationships is unascertainable and not capable of being fully compensated by money damages. *E.g., Rollins Protective Servs. v. Shaffer Co.*, 383 Pa. Super. 598, 557 A.2d 413, 415 (1989).
>
> AFMAI's ability to establish a new franchise presence in the Pittsburgh market is being immeasurably impaired by Company's continued operation of its Stores.
>
> Company's breach of its non-compete covenant is irreparably harming AFMAI in other, perhaps less obvious ways. Eighteen other AFMAI franchisees whose franchise agreements are coming up for renewal in the years 2000 and 2001 may be watching to see if Company is permitted to breach its non-compete covenant, which could establish a potentially catastrophic precedent and a "domino" effect whereby a series of franchisees leave the fold to establish competing businesses at or near the location of their THE ATHLETE'S FOOT® stores, thereby causing an irreparable loss of customer goodwill associates with THE ATHLETE'S FOOT® stores. Other courts have recognized this type of harm in deciding to enforce a restrictive covenant in favor of a franchisor. *Rita's Water Ice,* 1997 WL 165518, *5.

2000 WL 426186, at *11-12. As alleged in the Verified Complaint, Franchisor stands to sustain the same irreparable harm here if the covenant not to compete is not enforced against Defendants.

In *Maaco Enterprises*, the court, in concluding that enforcement of a non-competition agreement against a former franchisee was necessary to prevent causing the franchisor (Maaco) irreparable injury, held:

> Bremner and SSG's operation of an automobile painting and repair shop at the site of their former Maaco franchise will cause Maaco irreparable injury because Maaco will have difficulty refranchising Bremner and SSG's trading area, business will be diverted from Maaco's authorized franchisees, Maaco's relationships with its authorized franchisees and the integrity of the Maaco System will

13

>be impaired, and Bremner will be unjustly enriched by using the knowledge and experience gained from Maaco to serve former and potential customers of Maaco.

1998 WL 669936, at *5.

Similarly, in *Weiss Bros.*, the District of New Jersey held that a franchisor would be irreparably harmed without injunctive relief enforcing a non-competition agreement against a terminated franchisee:

>Irreparable injury to the plaintiffs might also result if the restrictive covenant contained in the . . . Franchise Agreements are not enforced.  As discussed earlier, the purpose of the restrictive covenant in this setting is to protect the goodwill of the franchisor. Were we not to grant a preliminary injunction, the goodwill of the franchisor would be harmed by the existence of a competing service center at the very site of the former Jiffy Lube center. Since customers are likely to patronize businesses close to home or work, the operation of a second service center, even without the Jiffy Lube logo, would greatly impair plaintiff's ability to establish another franchise in the area.

834 F. Supp. at 692.

The Franchisor's ability to allow an existing franchisee to expand into the former Protected Territory of Defendants is being impaired by Defendants' continued unauthorized operation of a the former Franchised Business in their former Territory.  No existing or new franchisee will understandably be reluctant to attempt to service customers in the former Protected Territory if Defendants continue to operate in violation of their covenant not to compete.

Franchisor also desires to enforce the covenant not to compete against Defendants as a means of protecting the continued viability of the franchise system.  The testimony of the franchisor in *Economou v. Physicians Weight Loss Centers of America*, 756 F. Supp. 1024 (N.D. Ohio 1991) contains perhaps the best explanation concerning the irreparable harm that occurs to

the franchise system if courts do not enforce valid non-competition covenants against former franchisees:

> Q. Would you please tell the Court why you are as the head of the franchising company, why you think it's important to enforce the covenant not to compete in this case with respect to the Freehold and East Brunswick retail center?
>
> A. Well, I think it's important, not only there but in any other instance.
>
> Q. Why is that?
>
> A. And this is strictly my own personal viewpoint. I am not an attorney. I'm not a legal person. I am a book's person.
>
> It's from a business standpoint, from a business standpoint, especially for most franchisors. Now, you can exclude franchisors that are huge and successful that are brand driven.
>
> If you take MacDonald's [sic], for example, that if you tell somebody you got to decharacterize your center, but you can do burgers somewhere else, it doesn't really make any difference for MacDonald's [sic] because it is brand driven, that franchise.
>
> But in those franchises that are three, four, five $600,000 centers, the brand doesn't drive the system. The system drives the franchisor, and the only protection you have in franchising, the only governing clause, if you will, and in the franchise agreement is the noncompete.
>
> It would be akin to patent protection for an inventor, akin to copyright profession [sic] for a playwright or guy that writes a book. If we don't get a non-compete that we can honor, we don't have a system.
>
> If we don't win this case, we don't have a franchise. Because every time something goes wrong, some franchisee is going to say, "screw it." That's the way I see it.

756 F. Supp. at 1032-33.

For all of the foregoing reasons, irreparable injury will result unless Franchisor is granted the requested preliminary injunction, and Defendants are enjoined from competing in violation of their covenant not to compete.

## C. Plaintiff Is Entitled to a Preliminary Injunction Because Injury to Plaintiff Outweighs Any Damage Defendants Might Suffer

### 1. The Lanham Act Counts

The purpose of balancing the hardships is to ensure that the injunction will not harm the infringer more than a denial of the injunction — and continued unlawful use of its mark and trade dress — would harm the owner thereof. *Opticians*, 920 F.2d at 197. The equities weigh heavily in favor of Franchisor and compel the conclusion that the risk of irreparable harm to Franchisor, absent an injunction, is far greater than any conceivable harm to Defendants if the motion is granted. *See id.* at 197 (equities favor injunction to prevent unlawful use of marks); *KFC Corp. v. Godley*, 714 F. Supp. 264, 267 (W.D. Ky. 1989) (threatened harm to trademark owner generally outweighs harm to infringer).

In this case, enforcement of the requested preliminary injunctive relief will impose no undue hardship on Defendants. As noted in *American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d 103, 107 (2d Cir. 1978), "[o]ne who adopts the mark of another for similar goods acts at his own peril." In this case, any harm to Defendants was brought about by their own actions in continuing (after warnings) to use Geese Police Marks, Geese Police Trade Dress and Geese Police System and to operate in breach of their covenant not to compete. *See Opticians*, 920 F.2d at 197 (defendant can hardly claim to be harmed where it brought any and all difficulties occasioned by the issuance of an injunction upon itself).

16

The requested relief prevents Defendants from using the Geese Police Marks, Geese Police Trade Dress and Geese Police System in violation of the Lanham Act and the Franchise Agreement between the parties.

### 2. *Breach of the Non-Competition Covenant in the Operating Agreement*

The requested relief prevents Defendants from competing within the four specific areas defined by Section 16.2.3 of the covenant not to compete of the Franchise Agreement. Defendants may still conduct a business at their present location as long as they cease using the Geese Police Marks, Geese Police Trade Dress and Geese Police System and are not competing with Franchisor by advertising, offering for sale and selling trained Border Collies for geese control. Defendants are free to sell dogs and even trained Border Collies, but they are prohibited from selling trained Border Collies for geese control because that directly violates the provision of the covenant not compete that defines the "competitive business" as one that "offers **products** or **services** which involve the inhabitation of property by, and control of, birds and waterfowl." *See* Section 16.2.3 of the Franchise Agreement (emphasis added). Defendants' ability to earn a living and a profit is not seriously diminished.

Any hardship which results is not "undue" because Defendants are merely having to abide by the terms of the Franchise Agreement. Indeed, Defendants have no one to blame but themselves for their current difficulties. Defendants chose to violate the in-term covenant not to compete by selling trained Border Collies for geese control while simultaneously operating the Franchised Business. Having chosen to violate the Franchise Agreement, it is not unjust to now require Defendants to live up to their contractual obligations.

In determining that the harm to a franchisor outweighed any damage to a former franchisee (Zell Investment) as a result of the latter's breach of a non-competition covenant, the Western District of Pennsylvania stated:


> That enforcement of the covenant-not-to-compete would require defendant to either move, change its line of business or go out of business is not undue hardship. If it were, no covenant-not-to-compete would ever be enforced. Moreover, Zell Investment's extensive years of relevant business, sales, retail and marketing experience would enable it to move or change its line of business rather easily.

*Athlete's Foot Mktg. Assocs.*, 2000 WL 426186, at *13.

Other courts faced with balancing the hardships in this context have reached a similar conclusion. *See, e.g., Maaco Enters., Inc.*, 1998 WL 669936, at *5 (balancing of the hardships of the parties favors the enforcement of the restrictive covenant; "irreparable harm that Maaco will suffer if an injunction was not issued outweighs the self-inflicted harm [the former franchisee] may suffer if an injunction issues [as] [a]ny harm suffered by [former franchisee] was brought on by themselves as a result of their breach of the Franchise Agreement"); *Rita's Water Ice Franchise Corp.*, 1996 WL 165517, *5 ("preliminary injunction will not impose hardship on defendants beyond that necessary to protect plaintiff's contractual interests").

### IV. CONCLUSION

For the foregoing reasons, Plaintiff Franchisor respectfully request that the Court grant a preliminary injunction against Defendants.

*s/ Lauren Adornetto Woods*
Lauren Adornetto Woods
Buchanan Ingersoll & Rooney PC
Incorporated in Pennsylvania
700 Alexander Park, Suite 300
Princeton, NJ 08540
(609) 987-6813

Attorneys for Plaintiff GPI, LLC