Keith J. Miller, Esq.
**ROBINSON MILLER LLC**
One Newark Center, 19th Floor
Newark, New Jersey 07102
Telephone: 973-690-5400
Facsimile: 973-466-2761
kmiller@rwmlegal.com

*Attorneys for Defendants*
*Doggone Geese, Inc. and Cathy P. Benedict*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GPI, LLC**, | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 3:18-cv-05122-FLW-TJB |
| | : |
| **DOGGONE GEESE, INC.**, et. al. | : MEMORANDUM OF LAW IN |
| | : OPPOSITION OF ORDER TO SHOW |
| | : CAUSE PURSUANT TO FED. R. CIV. P. |
| | : 65 |
| | : |
| Defendants. | : |

1

## TABLE OF CONTENTS

I.     **STATEMENT OF FACTS** ...............................................................................5

   A.   Franchise Agreement(s) Between Parties. ......................................................5

   B.   Covenants and Business of GPI. .....................................................................6

   C.   Termination of Franchise Agreement with DGI. ............................................7

   D.   Ms. Benedict's dog sales. ...............................................................................9

   E.   DGI and Ms. Benedict have stopped all use of Geese Police Marks. .............10

II.    **LEGAL STANDARD** ...............................................................................**10**

III.   **ARGUMENT** ...........................................................................................**11**

   A.   Plaintiff Claims are Without Merit. ..............................................................11

     1. Selling Dogs Is Not Competitive ..............................................................13

     2. Ms. Benedict's Restrictions Lapsed By August 31, 2016. .......................14

     3. The Franchise Agreements Restrictive Covenants Are Unenforceable Restraints on Trade ..........................................................................................................18

     4. These Unreasonable Restraints On Trade Cannot Be Saved By Blue Penciling ..............23

     5. Unclean Hands and Fraudulent Notarization ...........................................23

   B.   Plaintiff Will Not Suffer Irreparable Harm ...................................................24

   C.   Harm to DGI and Ms. Benedict Far Outweighs the Harm to Plaintiff ...........26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Novartis consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,* 290 F.3d 578, 586 (3d. Cir. 2002)..............................................................................................................11

*Ctr. 48 Ltd. P'ship v. May Dep't Stores Co.,* 355 N.J. Super. 390, 405, 810 A.2d 610, 618–19 (App. Div. 2002) ...........................................................................................................................15

*United Concrete Pipe Corp. v. Spin–Line Co.,* 430 S.W.2d 360, 365–66 (Tex.1968)..................15

*Community Hosp. Group, Inc. v. More,* 869 A.2d 884, 897 (N.J. 2005).......................................18

*J.H. Renarde, Inc. v. Sims,* 711 A.2d 410, 416 (N.J. Super. Ct. Ch. Div. 1998) ..........................18

*Kadi v. Massotto,* No. A-2555-07T2, 2008 WL 4830951, at *8 (N.J. Super. Ct. App. Div. Nov. 10, 2008) .....................................................................................................................................18

*Laidlaw, Inc. v. Student Transp. of Am.,* 20 F.Supp.2d 727, 754 (D.N.J .1998) ..........................18

*Graziano v. Grant,* 326 *N.J.Super.* 328, 344-45 (App.Div.1999) .................................................19

*Reading & Language Learning Ctr. v. Sturgill,* 94 Va. Cir. 94 (2016).......................................20

*Actega Kelstar, Inc. v. Musselwhite,* No. CIV09-1255(RBK/JS), 2010 WL 744126, at *3 (D.N.J. Mar. 2, 2010).............................................................................................................................23

*Saudi Basic Indus. Corp. v. ExxonMobil Corp.,* 401 F. Supp. 2d 383, 386 (D.N.J. 2005) ...........24

*Total Car Franchising v. Wilhovsky, No. CIV.A. 02-684 JWB, 2002 WL 34727053, at *10 (D.N.J. Mar. 28, 2002)* ................................................................................................................24

*Jiffy Lube Int'l, Inc. v. Weiss Bros.,* 834 F. Supp. 683 (D.N.J. 1993)..........................................24

*Grease Monkey International, Inc. v. Ralco Lubrication Services, Inc.,* 24 F.Supp.2d 120, 125 (D.Mass.1998).............................................................................................................................24

*Exec. Home Care Franchising LLC v. Marshall Health Corp.,* No. CIV.A. 15-760 JLL, 2015 WL 1422133, at *5 (D.N.J. Mar. 26, 2015), *aff'd,* 642 F. App'x 181 (3d Cir. 2016)...................25

*Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir.1994). .................................................26

*Apollo Tech. Corp. v. Centrosphere Indus. Corp.,* 805 F.Supp. 1157, 1209 (D.N.J.1992)...........26

*Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir.1988) ....26

*In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1141 (3d Cir.1982) ...................26

*AV Sols., LLC v. Keystone Enter. Servs., LLC*, No. CIV.A. 11-3503 JLL, 2011 WL. .................26

<u>**MEMORANDUM OF LAW IN OPPOSITION OF ORDER TO SHOW CAUSE**</u>
<u>**PURSUANT TO FED. R. CIV. P. 65**</u>

Defendants, Doggone Geese, Inc. and Cathy Benedict, by and through undersigned

counsel, file this Memorandum of Law in Opposition of Order to Show Cause Pursuant to Fed.

R. Civ. P. 65, and in support thereof states as follows:

## I.      STATEMENT OF FACTS

### A.      Franchise Agreement(s) Between Parties.

Defendant, Cathy Benedict ("Ms. Benedict"), has been involved in geese control,

working with and training dogs (typically border collies) since at least 1999. Cathy P. Benedict

Declaration ("Benedict Decl.") para. 2. On or around September 14, 1999, Cathy Benedict

formed the business entity Doggone Geese, Inc. ("DGI") for the purpose of using dogs for geese

control.  In or around August 2003, DGI entered into a business relationship with Plaintiff, GPI,

LLC ("GPI") as a franchisee of GPI through a Franchise Agreement (the "2003 Franchise

Agreement") with an effective date of August 2003. The term of the 2003 Franchise Agreement

was for five years and required a renewal opportunity every five years thereafter. In accordance

with this renewal option, DGI renewed its Franchise Agreement on August 31, 2009 by re-

executing the 2009 Franchise Agreement and the Exhibits (the "2009 Franchise Agreement").

DEX 1.[1]  Then, in October 2014, DGI renewed its Franchise Agreement by executing a written

agreement and acknowledgement extending DGI's commitment for another five years until

August 31, 2019. Benedict Decl. para. 3 and 4.  However, unexpectedly and without warning, on

February 8, 2018 DGI received a letter from GPI stating that it was unilaterally terminating the

Franchise Agreement between them (after a15 year relationship with DGI) because, according to

---

[1] All references to Exhibits as "DEX" refer to the Exhibits attached to the Declaration of Cathy P.
Benedict as enumerated therein.

GPI, Ms. Benedict (i.e. not DGI) was "selling border collies for the purpose of goose control" (the "Feb 8, 2018 Termination Letter") DEX 4.

Notably, Ms. Benedict is not a signatory to the Franchise Agreement, or otherwise identified or contemplated therein. DEX 1 and 3. There is no dispute that the Franchisee, at all times, was DGI. DEX 1. However, in or around August 31, 2003, Ms. Benedict (individually) executed Exhibit C to the Franchise Agreement titled "GUARANTEE, INDEMNIFICAITON, AND ACKNOWLEDGEMENT" ("2003 Exhibit C"). 2003 Exhibit C is the only document that identifies any rights or relationship between Ms. Benedict and GPI in 2003. In 2009, DGI renewed the Franchise Agreement, and, Ms. Benedict (individually) re-executed Exhibit C agreeing to the extension period ("2009 Exhibit C"). DEX 2. 2009 Exhibit C is the only document that identifies any rights or relationship between Ms. Benedict and GPI in 2009. DEX 2. However, Ms. Benedict (individually) did not re-execute, re-affirm, re-acknowledge, or otherwise bind herself personally in any way to the renewal of the Franchise Agreement by DGI in 2014. DEX 1 and 3. GPI did not have Ms. Benedict re-execute Exhibit C as she had done at the initial singing in 2003 or in the 2009 renewal. Benedict Decl. para 3 and 4; DEX 1, 2, and 3. Ms. Benedict did not agree to, or sign, any personal guarantee in 2014. Benedict Decl. para 3 and 4. This was expressly contemplated by her when she renewed for the DGI in 2014. Benedict Decl. para 3 and 4. Thus, Ms. Benedict's (individual) agreement with GPI terminated in 2014. DEX 1 and 2.

### B.    Covenants and Business of GPI.

Because the 2009 Exhibit C was the last re-execution and affirmation by Ms. Benedict (individually), her obligations thereunder expired with the 2009 Franchise Agreement on August 31, 2014. DEX 2. As a result, assuming arguendo that the post-termination obligations apply to

Ms. Benedict, impact DGI adversely, and/or are legally enforceable, such post-termination

obligations extend for a term of two years from the date of termination. Therefore, any alleged

post-termination obligations restraining Ms. Benedict would have expired on or around August

31, 2016. DEX 1 at para. 16.3 and DEX 2.  Neither GPI's Verified Complaint ("GPI Compl")

nor its Memorandum in Support of its Order to Show Cause pursuant to Fed. R. Civ. P. 65 ("GPI

Memo") identify or allege any facts that Ms. Benedict sold dogs on or before August 31, 2016.

In fact, the sole evidence that has been provided to support this allegation shows screenshots of a

dog sale advertisement through a company called www.Keepstonefarm.com, which includes Ms.

Benedict's name. *See* GPI Compl. Exhibit A.  Although the "evidence" GPI relies on does not

have a date, this advertisement shows a dog for sale in late 2017 (i.e. more than two years after

the expiration of the personal guarantee) and would have been posted on or around November

2017. DEX 1.  This endeavor involved only Ms. Benedict.  DGI was not involved with

Keepstone Farm, the training of dogs, or the selling of dogs.

Notably, the Franchisor and Franchisees for Geese Police do not sell dogs to clients or

customers.  Aside from internal sales and transfers of dogs (e.g. GPI sells a dog to DGI), Geese

Police does not sell dogs to clients or any third parties.  Benedict Decl. para 6.  In fact, there is

no client offering or service provided by GPI or DGI for the sale of dogs or training of dogs.

Benedict Decl. para 6 and 7.  Geese Police's, including DGI and GPI, entire client service solely

involve chasing geese away from a client's facility with a dog. Benedict Decl. para 6 and 7.

Simply put, GPI is not in the business of servicing, selling, or training dogs for customers.

Benedict Decl. para 8.

      **C.**      **Termination of Franchise Agreement with DGI**

On February 8, 2018, GPI unexpectedly sent DGI a letter stating that the Franchise Agreement was terminated effective immediately.  DEX 4.  The sole basis for the termination of the Franchise Agreement was that Ms. Benedict was selling dogs, presumably in late 2017, inferred by the attached photographs.   Benedict Decl. para 5; DEX 4.  Immediately thereafter, DGI contacted GPI to contest the termination.  After agreeing to a time to respond, DGI sent a formal notice on February 22, 2018, which outlined the position of DGI and Ms. Benedict. DEX 5.[2] In the February 22, 2018 letter, DGI requested that GPI produce a copy of the re-execution by Ms. Benedict (personally) in 2014. DEX 5.  GPI responded on March 6, 2018 with a letter and attachment; however, the attachment was the 2009 Exhibit C renewal, because it has not been executed in 2014.  DEX 6.  In addition, GPI instructed another Franchisee owner, by the name of Doug Marcks, the nephew of Dave Marcks (owner of GPI), to systematically contact DGI's customers, instruct them to stop all work with DGI, and begin work with Doug Marcks and his franchise. Benedict Decl. para 10. On March 19, 2018 they provided a letter to all of Ms. Benedict's clients stating she was no longer a franchisee and that they want to begin service for the client. DEX 10. Finally, GPI sent a notice to DGI's colleagues and other franchise owners stating that DGI has been terminated as a franchisee because "Ms. Benedict has been selling border collies for her own account and those sales adversely impact [GPI's] ability to sell our franchises." DEX 7.

Not long before the February 8, 2018 termination letter was sent from GPI, the ownership of GPI had been vocal about their dislike of Ms. Benedict personally, which culminated in GPI ownership being profane and extremely aggressive to Ms. Benedict at a public event. Benedict

---

[2] The letter contained some proposed options to try and come to an immediate resolution, which have been redacted.

Decl. para 11. They repeatedly accused her of being annoying and critical of the Franchise management.  Benedict Decl. para 11.  Shortly thereafter, GPI manufactured an illegitimate reason to terminate DGI.  DEX 4.

   **D.     Ms. Benedict's dog sales.**

   In 2017 and 2018, Ms. Benedict, while working with an organization called Keepstone Farms, was involved in the training of dogs, including herding instincts for sheep, ducks, geese, and other domestic animals. Benedict Decl. para 12. In addition to training services, Keepstone Farms also sold dogs. Benedict Decl. para 12.  DGI had absolutely no involvement, at all, in these activities as all dog training and dog sales were conducted directly with Ms. Benedict individually.  Benedict Decl. para 12.  Prior to August 31, 2016, neither Ms. Benedict, nor DGI for that matter, had sold any dog to a customer, prospective customer, competitor, non-Geese Police related entity, or vendor of DGI or the Geese Police franchisees ("Third Parties"). Benedict Decl. para 13.  It was not until 2017 that Ms. Benedict (individually), again, without involving DGI, advertised and/or sold dogs to Third Parties.  Benedict Decl. para 14. Prior to 2017, Ms. Benedict was not involved in the active advertising for the sale of dogs, and, in fact, had only ever sold dogs to Geese Police Franchisees. Benedict Decl. para 15. DGI has never been involved in the advertisement or sale of dogs to any Third Parties.  Benedict Decl. para 16.

   Notably, GPI has historically not found it to be a violation for Ms. Benedict selling dogs and she has been very open about the process. DEX 11 and 12.  In November and December of 2017 GPI conducted an audit of DGI.  At the conclusion of the audit, on December 6, 2017 GPI sent a letter to Ms. Benedict and DGI stating among other things that she needed to "… not sell any more dogs advertised as Geese Police trained…" DEX 11. Implicit in that correspondence is not an admonishment or request not to sell dogs, only that they not be sold as "Geese Police

trained." This is because DGI, Ms. Benedict, and GPI did not consider the sale of dogs to be restricted or competitive. Additionally, it identifies that "[GPI] [is] willing to overlook the discrepancies and the lack of 1099's contingent on the following." DEX 11. DGI and Ms. Benedict respond confirming that they agree, amongst other things, to "not sell any more dogs advertised as Geese Police." DEX 12. From that point on, Ms. Benedict fully complied with that letter. Benedict Decl. para 17.

### E.    DGI and Ms. Benedict have stopped all use of Geese Police Marks

As of March 31, 2018, DGI and Ms. Benedict have ceased all use of the Geese Police Marks. Benedict Decl. para 18.  All vehicle markings have been removed and the website has been taken down.  Benedict Decl. para 19.  All customers of DGI have been notified of the situation and have been apprised that DGI will no longer be providing services as a Geese Police Franchisee.  Benedict Decl. para 20.  In addition, on March 19, 2018 GPI sent a letter to all of DGI's customers indicating that the franchise agreement had been terminated and that DGI was no longer a franchisee.  DEX 10.  DGI has kept all of its information for purposes of this lawsuit, but is otherwise not using or attempting to use any documents, contracts, or information provided by GPI. Benedict Decl. para 21. On March 30, 2018, Ms. Benedict created the entity Goose Rangers, LLC and Goose Rangers, LLC has begun to operate and promote itself and service using that brand.  Benedict Decl. para 22.  Goose Rangers, LLC has no relationship to DGI, which has ceased all operations as a result of the actions of GPI.  Benedict Decl. para 23.

## II.    LEGAL STANDARD

Preliminary injunctions are issued under the procedures of Federal Rule of Civil Procedure 65(a).  A preliminary injunction is an extraordinary remedy, which should be granted only in limited circumstances.  In exercising its discretion, the District Court must be convinced

that the following factors favor granting preliminary relief: (1) the likelihood that the moving

party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable

harm without injunctive relief; (3) the potential harm to the movant outweighs the harm the

defendant may suffer should an injunction issue; and (4) the public interest.  *See generally*,

*Novartis consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co*., 290 F.3d

578, 586 (3d. Cir. 2002)(*internal citations and quotations omitted*).

## III.    ARGUMENT

### A.  Plaintiff Claims are Without Merit.

Plaintiff has brought the present action based upon four separate counts. However, these

counts fall into two principle categories of claims that it has asserted in both GPI Compl and GPI

Memo.  Fundamentally, GPI alleges (1) trademark/service mark infringement and (2) breach of

the Franchise Agreement's restrictive covenants during and after the alleged termination.  All of

Plaintiff's counts and claims universally rely on the single issue and allegation that DGI and/or

Ms. Benedict breached the restrictive covenants in the Franchise Agreement and were properly

terminated on February 8, 2018.  However, DGI and/or Ms. Benedict are not and were not in

breach of the Franchise Agreement and the attempt to terminate the Franchise Agreement by GPI

on February 8, 2018 and its resulting actions actually place GPI in breach of the Franchise

Agreement.

It is undisputed that the Franchise Agreement provides a written non-exclusive license for

all trademarks/service marks held and used by Geese Police.  DEX 1 at Provision 1 and 7.

Specifically, provision 1.1 of the Franchise Agreement states, "Franchisor grants to Franchisee

the right and Franchisee undertakes the obligation, upon the terms and conditions set forth in this

Agreement: (a) to establish and operate a franchised business under the System **and using the**

**Proprietary Marks (the "Franchised Business")** and (b) to use the Proprietary Marks and the System solely in connection therewith. DEX 1.  As a result, if the Franchise Agreement remains in force or effect, both Plaintiff's trademark infringement and unfair competition claims must fail.

In addition, the Franchise Agreement is a term contract and GPI cannot voluntarily terminate the Franchise Agreement without cause or default.  DEX 1 at Provision 2 and 14.  In its February 8, 2018 letter and in the GPI Compl, GPI claimed that DGI has violated provision 16.2 and 16.2.3 of the non-compete provisions contained in the Franchise Agreement stating, "Cathy Benedict is selling border collies for the purpose of goose control," and, "[] the conduct of business involving the sale of border collies for goose control in Leesburg, Virginia is a violation of Section 16.2.3 of the Franchise Agreement." DEX 4 and Compl. at 74[3].

Provisions 16.2 and 16.2.3 state as follows:

"16.2   … Franchisee covenants that during the term of this Agreement, except as otherwise approved in writing by Franchisor, Franchisee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or legal entity:

16.2.3  Own, maintain, operate, engage in, be employed by, provide any assistance to, or have any interest in (as owner or otherwise) any business that: (a) offers products or services which involve the inhabitation of property by, and control of, birds and waterfowl; and (b) is, or is intended to be, located at or within:

16.2.3.1        the county or municipality in which the Approved Location is located; or

16.2.3.2        The Protected Territory; or

---

[3] Although not included in the February 8, 2018 letter, the Complaint at para. 74 also mentions that Plaintiff was operating a competing business using trained Border Collies.  We believe this may be a scrivener's error as we are not sure what this is referencing.  Up until February 8, 2018, DGI was operating normally and there were no other businesses or allegations of such that we are aware of beyond the allegation that Ms. Benedict was advertising and/or selling dogs.

16.2.3.3        One hundred fifty (150) miles of the Approved Location; or

16.2.3.4        One hundred fifty (150) miles of any business operating under the Proprietary Marks."

Further, the post termination provision identified in Section 16.3 contains identical language, but identifies that these obligations continue for two years post termination.  DEX 1. Ms. Benedict never engaged in any competitive behavior or otherwise breached the Franchise Agreement. Thus, GPI improperly attempted to terminate the Franchise Agreement without cause. As a result, all of Plaintiff's claims must fail.

**1.   Selling Dogs Is Not Competitive.**

GPI and its franchisees are not in the business of training dogs or selling dogs.  Benedict Decl. para 6, 7, and 8.  In fact, GPI has specifically stated to the Franchisees that Geese Police "is not in the business of selling dogs." Benedict Decl. para 6. According to GPI's website it provides environmentally safe Canada Goose control services.  DEX 8.  This process involves both trained border collies, and, handlers "specially trained to work with and properly control the dogs using special techniques." DEX 8. Geese Police has no service or product offering the training of and/or sale of dogs.  Benedict Decl. para 7 and 8.

Even assuming arguendo that the alleged sale of dogs occurred by or in conjunction with DGI, occurred during the restricted period, and that the restrictions are legally enforceable, the sale of dogs is simply not competitive to Geese Police.  GPI does not buy, train or sell dogs.  It removes geese from a client's premises. This service is completed by a handlers experienced with geese control working in conjunction with the animal.  Benedict Decl. para 24. Dogs, even trained dogs, are simply a tool used by the franchisees to provide the service.  These dogs are not a proprietary tool, or a trade secret. These dogs do not receive any specialized training specific to GPI or the franchisees. Benedict Decl. para 25. To analogize, if this were a McDonald's

13

franchise, this would be the functional equivalent of McDonald's telling a franchisee's owner that the individual cannot sell cooking grills, uniforms, fryers, or even spatulas because the sale of these tools are competitive to McDonald's because these items are essential to the operation of their business.  Dogs, even trained birddogs, are just a tool used by the company, but are not the service or the service/product offering.

Further, GPI has historically not found it to be a violation for Ms. Benedict selling dogs and she has been very open about the process. DEX 11 and 12. In November and December of 2017 GPI conducted an audit of DGI.  At the conclusion of the audit, on December 6, 2017 GPI sent a letter to Ms. Benedict and DGI stating among other things that she needed to "… not sell any more dogs advertised as Geese Police trained…" DEX 11. Implicit in that correspondence is not an admonishment or request not to sell dogs, only that they not be sold as "Geese Police trained." This is because Ms. Benedict and GPI did not consider the sale of dogs to be restricted or competitive. Additionally, it identifies that "[GPI] [is] willing to overlook the discrepancies and the lack of 1099's contingent on the following."  DGI and Ms. Benedict respond confirming that they agree, amongst other things, to "not sell any more dogs advertised as Geese Police." DEX 12. From that point on, Ms. Benedict fully complies with that letter. Benedict Decl. 17.  At a minimum, GPI has expressly waived all activities prior to December 6, 2017. DEX 11. However, GPI functionally rubber stamps the parties interpretation of 16.2.3 to not include the sale of dogs as competitive or restricted. DEX 11.

### 2.  Ms. Benedict's Restrictions Lapsed By August 31, 2016.

Ms. Benedict is not a party to the Franchise Agreement.  The only document executed by her personally was the 2003 Exhibit C and 2009 Exhibit C. "When resolving questions as to the interpretation of contracts of guarantee, we look to the rules governing construction of contracts

14

generally.  Guarantee agreements should be strictly construed and their language interpreted most strongly against the party at whose insistence such language was included." *Ctr. 48 Ltd. P'ship v. May Dep't Stores Co.*, 355 N.J. Super. 390, 405, 810 A.2d 610, 618–19 (App. Div. 2002)(*internal citations and quotations omitted*).  "It is fundamental that a guarantor is not bound beyond the strict terms of its promise and its obligation cannot be extended by implication." *Id.* "[] [W]e agree with the Restatement rule that a modification of the obligation between the principal obligor and the obligee does not discharge the secondary obligor unless 'the modification creates a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed pursuant to the transaction prior to modification.'" *Id.* "A material alteration is an alteration of the underling debt that either injures or enhances the risk of injury to the guarantor." *Id.* (citing *United Concrete Pipe Corp. v. Spin–Line Co.*, 430 S.W.2d 360, 365–66 (Tex.1968).

In the present case, Ms. Benedict is not a signatory or contemplated by reference in the Franchise Agreement. DEX 1 and 3.  There is no independent reference to Cathy Benedict and/or any inclusive definition identifying Franchisee to mean its owners, portion of owners, subsidiaries, etc.  DEX 1 and 3.  It is undisputed that the Franchisee, at all times, was DGI. DEX 1 and 3. However, on or around August 31, 2009, Ms. Benedict (individually) executed Exhibit C to the Franchise Agreement identified with the caption "GUARANTEE, INDEMNIFICAITON, AND ACKNOWLEDGEMENT" ("2009 Exhibit C").  DEX 2.  2009 Exhibit C is the only document that identifies any rights or relationship between Ms. Benedict and GPI in 2009.  However, Ms. Benedict (individually) did not re-execute, re-affirm, re-acknowledge, or otherwise bind herself personally in any way to the renewal of the Franchise Agreement by DGI in 2014. Benedict Decl. para 3 and 4; DEX 3. In 2014, no guarantee was ever

signed. Therefore, the only agreement that could exist between Ms. Benedict and GPI that could in anyway be argued to restrict her or restrain her rights to free trade is the 2009 Exhibit C.

2009 Exhibit C states,

"This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied by or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms."

It is the contention of Defendants that the plain language of the 2009 Exhibit C, "this Guarantee shall terminate upon the termination or expiration of the Agreement," means the Franchise Agreement expires after the five year term. There is no mention of or reference to renewals or that 2009 Exhibit C binds itself upon any renewals. DEX 1, 2, and 3. "Guarantee agreements should be strictly construed and their language interpreted most strongly against the party at whose insistence such language was included." *Ctr. 48 Ltd. P'ship v. May Dep't Stores Co.*, 355 N.J. Super. 390, 405, 810 A.2d 610, 618–19 (App. Div. 2002)(*internal citations and quotations omitted*). "It is fundamental that a guarantor is not bound beyond the strict terms of its promise and its obligation cannot be extended by implication." *Id*.

Further, it is evident that GPI believed this re-execution was necessary and required, as GPI had Ms. Benedict re-execute Exhibit C in the 2009 renewal as she had done previously at the initial signing in 2003.  Benedict Decl. para 3; DEX 1 and 2.

In addition, the Franchise Agreement at provision 2 (TERM AND RENEWAL) states:

"2.1     This Agreement shall be in effect upon its acceptance and execution by Franchisor and, except as otherwise provided herein, the term of this Agreement shall be five (5) years from the date first above written [August 31, 2009].

>     2.2     Franchisee may, subject to the following conditions, renew this
> Agreement for two (2) additional consecutive terms of five (5) years each.  The
> following conditions shall be met prior to each renewal:"

Again, the Franchise Agreement specifically used the language "renew."  It indicates the Franchisee may renew, which is defined only as DGI.  Renew by its name contemplates a "new" endeavor, according to its definition using google dictionary, it is a verb used to mean "resume after an interruption." DEX 9. Thus, the term of the Franchise Agreement expires, and, subsequently, by contractual rights (assuming conditions are met), the parties can enter into the agreement or a functional equivalent (pending conditions again) for a new stated term.  DEX 1 at Para 2 and 2.2.6 ("Franchisee shall, at Franchisor's option, execute Franchisor's then-current form of franchise agreement, which shall supersede this Agreement in all respects, and the terms of which may differ from the terms of this Agreement, including, without limitation a higher percentage royalty fee …").  In other words, it is a new agreement for a new term; thus, the choice and use of the word "renewal" as opposed to continuation or extension.  Importantly, as noted above, a condition to renewal is that GPI may change the terms of the Franchise Agreement entirely, including the material consideration, royalties.  This, standing alone, shows that the parties are contemplating the renewal to be an entirely new endeavor and agreement based on whatever form it takes at the time of execution.

At best, GPI may contend that Ms. Benedict knew there was a contractual right of DGI to enter into another agreement (i.e. "renew") for an additional five-year period, and, that this knowledge implied that she agreed to be bound by all such renewals.  However, again, this argument misses the mark and is contrary to New Jersey law.  "It is fundamental that a guarantor is not bound beyond the strict terms of its promise and its obligation cannot be extended by implication." *Id.*  There is simply no language in the agreement that Ms. Benedict contractually

agreed to be bound by any renewals.  The 2009 Exhibit C plainly says that the guarantee ends

when the Franchise Agreement expires.  By its own language, the Franchise Agreement expires

in five years.  The contractually provided option to enter into a new agreement for an additional

five year term is inherently discretionary and distinct.  When that time comes, Ms. Benedict

maintains the right to agree or not agree to be bound.  GPI can agree or not agree to carry

forward with a similar agreement, or, with a new agreement, even new terms or consideration

(e.g. royalties). DEX 1 (See para 2.2.6).

GPI did not have Ms. Benedict re-execute Exhibit C, or any other guarantee agreement,

as she had done at the initial signing in 2003 or in the 2009 renewal.  Benedict Decl. para 3;

DEX 2. As a result, Ms. Benedict's (individual) agreement with GPI terminated in 2014.  DEX 1

and 2. Any post-termination obligations regarding Ms. Benedict expired August 31, 2016.  DEX

1 and 2.

### 3.   The Franchise Agreements Restrictive Covenants Are Unenforceable Restraints on Trade.

New Jersey courts will only enforce restrictive covenants if they are reasonable in scope

and duration. *Community Hosp. Group, Inc. v. More*, 869 A.2d 884, 897 (N.J. 2005). As New

Jersey disfavors restraints on trade, restrictive covenants are narrowly construed. *J.H. Renarde,*

*Inc. v. Sims*, 711 A.2d 410, 416 (N.J. Super. Ct. Ch. Div. 1998).  A [restrictive covenant] is

reasonable [] if it: (1) protects legitimate interests of the employer; (2) does not impose an undue

hardship on the employee; and (3) is not injurious to the public. *Kadi v. Massotto*, No. A-2555-

07T2, 2008 WL 4830951, at *8 (N.J. Super. Ct. App. Div. Nov. 10, 2008).  Here,

the *Solari/Whitmyer* test is applicable. *Id.*; *see also Laidlaw, Inc. v. Student Transp. of*

*Am.,* 20 F.Supp.2d 727, 754 (D.N.J .1998) (finding the *Solari/Whitmyer* test applicable to

determine whether a noncompete agreement ancillary to the sale of a business is

enforceable); *Graziano v. Grant,* 326 *N.J.Super.* 328, 344-45 (App.Div.1999) (the court

"perceive[d] no difference between a covenant ancillary to an employment agreement and a

covenant ancillary to the sale of a medical practice," finding the same three-

prong *Solari/Whitmyer* test applicable to determine whether the covenant was enforceable)).

As an initial matter, Ms. Benedict vigorously argues that her agreement with GPI expired

on August 31, 2014; however, for purposes of this section and ease of the Court's review, we

will present the information arguendo as though Ms. Benedict was bound by the provisions as

well.  GPI based its termination of the Franchise Agreement on paragraph 16.2 and 16.2.3 of the

Franchise Agreement. DEX 1.  Provisions 16.2 and 16.2.3 state as follows:

> "16.2   … Franchisee covenants that during the term of this Agreement,
> except as otherwise approved in writing by Franchisor, Franchisee shall not,
> either directly or indirectly, for itself, or through, on behalf of, or in conjunction
> with any person or legal entity:
>
> 16.2.3  Own, maintain, operate, engage in, be employed by, provide any
> assistance to, or have any interest in (as owner or otherwise) any business that: (a)
> offers products or services which involve the inhabitation of property by, and
> control of, birds and waterfowl; and (b) is, or is intended to be, located at or
> within:
>
> 16.2.3.1        the county or municipality in which the Approved Location
> is located; or
>
> 16.2.3.2        The Protected Territory; or
>
> 16.2.3.3        One hundred fifty (150) miles of the Approved Location; or
>
> 16.2.3.4        One hundred fifty (150) miles of any business operating
> under the Proprietary Marks."

This restrictive covenant is vastly overbroad.  It does not protect legitimate interests of

GPI and imposes a hardship on DGI and Ms. Benedict.  First, it does not restrict in scope to a

particular type of product or service that DGI or Ms. Benedict can perform, often referred to as

the "janitor test" in other jurisdictions. "Restrictive covenants that prohibit employees from working in any capacity for a competitor are overbroad." *Reading & Language Learning Ctr. v. Sturgill*, 94 Va. Cir. 94 (2016)(*internal citations and quotations omitted*)("thereby failing the 'janitor' test."). The language of the non-competition provision identifies that neither DGI nor Ms. Benedict can directly or indirectly "[o]wn, maintain, operate, engage in, be employed by, provide any assistance to, or have any interest in (as owner or otherwise) any business." DEX 1 at paragraph 16.2. Functionally, this preamble attempts to prohibit DGI or Ms. Benedict from "doing anything with anyone."

The non-competition provision goes on to narrow its restriction from "doing anything with anyone," to prohibit DGI or Ms. Benedict from "doing anything with anyone" that "offers products or services, which involve the inhabitation of property..." However, this would still mean that neither DGI nor Ms. Benedict could work for any person or business that "offers products or services, which involve the inhabitation of property…" in any capacity.  Thus, neither DGI nor Ms. Benedict could join the marketing team, accounting, be an administrative assistant, janitor, cook, office manager, etc. of any such company.  The non-competition provision extends to literally any role or position, regardless of the role or service provided by DGI or Ms. Benedict. Such a restriction imposes a hardship on DGI and Ms. Benedict, and, certainly, GPI cannot have a legitimate business interest in preventing Ms. Benedict from working as a cook or an administrative assistant.

Second, the principle restriction itself is wildly overbroad and its scope is entirely unreasonable.  The provision states "any business that: (a) offers products or services which involve the inhabitation of property by, and control of, birds and waterfowl." DEX 1 at provision 16.2 and 16.2.3. Geese Police uses border collies to humanely chase away Canadian Geese.

However, the scope of this restriction goes well beyond chasing away Canadian Geese, as DGI

and Ms. Benedict are prohibited from doing anything with any business that "involve[s]" the

inhabitation of property, and control of, [all] birds and waterfowl.  Functionally, it would prevent

DGI or Ms. Benedict from working with companies that sell hunting rifles, duck calls, turkey

calls, or hunting equipment.  Anything related to bird hunting, regardless of the type of bird,

would "involve" the control of birds and waterfowl where they live (inhabitation). The same

could be said for real estate development companies, construction companies, and wildlife

conservation organizations.  Further, this restriction would apply even if that was only a part of

their offerings (e.g. Walmart sells bird netting, guns, etc.). This restriction imposes a hardship on

DGI and Ms. Benedict, and, GPI cannot have a legitimate interest in keeping Ms. Benedict from

working at Walmart.

Third, the duration and geographic scope are overbroad.  Although New Jersey courts

have held a two year restriction to be enforceable, when taken in conjunction with the breadth of

the geographic scope it is substantially overbroad.  The GPI Memo identifies the Wikipedia

assessment of the square mileage of the franchise territory for just DGI. *See* GPI Memo at pg. 6.

Using those figures, the territory is roughly 723.9 square miles.  *Id.*   The restrictive covenant

then adds "[o]ne hundred fifty (150) miles of the Approved Location." DEX 3.  Adding a 150

mile radius around the borders of the territory (even using road miles, not air miles) identified

would include all of Washington, D.C. (10 miles on each side), the better portion of Maryland

(250 miles long and 90 miles wide), a good northern part of West Virginia, much of Delaware,

and the majority of Virginia including some counties south of Richmond.   However, this is only

a portion of the restrictions relative to DGI's territory.  The geographic restriction goes on to

indicate that DGI and Ms. Benedict are also prohibited from operating within "[o]ne hundred

21

fifty (150) miles of any business operating under the Proprietary Marks."  Franchisor has

seventeen franchisees licensed throughout the United States, including Delaware, Georgia,

Illinois, Indiana, Kansas City, Boston, North Carolina, and Philadelphia.  *See* GPI Compl at para

10.  As a result, GPI cannot proffer a legitimate reason as to why DGI or Ms. Benedict would be

unable to service the entirety of the majority of the eastern seaboard.

Further, this restriction is even more unreasonable when applied to the present case. GPI

relied on provision 16.2 and 16.2.3 to terminate DGI's Franchise Agreement based on the

allegation that Ms. Benedict worked with another business who advertised the sale of trained

dogs.[4]  As indicated above, the sale of dogs, or, advertisement for the sale of dogs is not

competitive to GPI. Nonetheless, GPI alleges that Keepstone Farm was in Leesburg, Virginia,

and, thus was within the restricted territory.  However, this would further expand the restrictive

covenant beyond its already incredible overbreadth.  The core issue should not be where the dogs

are trained or sold from, or, that they were advertised online.  The real question should be where

and to whom the dogs were sold.[5]  How would it harm GPI if Keepstone Farms sold a dog to

someone in California?  The location that a dog is trained in, kept at, and/or advertised from does

not impact GPI. As such, this provision is plainly overbroad and GPI's application of the

provisions is an attempt to expand its breadth even further.

Finally, Ms. Benedict has been in the business of geese control and training dogs long

before she began working with GPI. Benedict Decl. para 2.  A restriction that purports to prevent

Ms. Benedict from even selling dogs to anyone on the eastern seaboard for the next two years

would bankrupt Ms. Benedict and destroy DGI.  This would impose an undue hardship on Ms.

---

[4] GPI's supporting documents do not indicate that any dog was actually sold.
[5] GPI does not allege this as they don't' actually know if a dog was in fact sold, or, to whom or where it would have been sold.

Benedict as this has been her sole occupation for almost twenty years, roughly five years before she joined the franchise.

### 4. These Unreasonable Restraints On Trade Cannot Be Saved By Blue Penciling.

"New Jersey courts do not permit blue penciling as a matter of right, rather courts look at whether the employer overreached in obtaining the NCA [non-compete agreement] in the first place." *See Solari,* 264 A.2d at 56 (explaining that, "[w]hen an employer, through superior bargaining power, extracts a deliberately unreasonable and oppressive covenant he is no just position to seek, and should not receive, equitable relief from the courts."). In such instances, a NCA will neither be enforced nor modified." *Id*. (quoting *Actega Kelstar, Inc. v. Musselwhite*, No. CIV09-1255(RBK/JS), 2010 WL 744126, at *3 (D.N.J. Mar. 2, 2010)).  In the present case, GPI took no care in crafting a restriction that would legitimately protect its interests, and, instead, chose to cast a wide and oppressive net.  The amount of modification required to bring the provision into a reasonable breadth would functionally act as reformation of that provision. It would no longer look, read, or feel as it had been drafted. Defendants would be left guessing as to what operations are permitted by a Plaintiff who has already shown itself to be exceedingly aggressive and overreaching.   As a result, the Court should strike the provision in its entirety.

### 5. Unclean Hands and Fraudulent Notarization.

The 2009 Exhibit C contains a notarization section and a signature block.  DEX 2.  Ms. Benedict admits that the document contains her signature in the signature block.  However, Ms. Benedict executed this document in Virginia and mailed it to GPI in New Jersey with the incomplete notarization section. Benedict Decl. para 27.  Thereafter, at some point, Nicole Jeffers, signed and stamped this document.  DEX 2. This was not authorized by Ms. Benedict. Benedict Decl. para 27.  Frankly, nobody could have "authorized" this action as the function of a

notary is to prevent this type of behavior. Regardless, this indicates that GPI believed the document required a full notarization to be ratified, so it affixed a notary seal despite the fraudulent nature of such an act. An attempt to "complete" the document by affixing a fraudulent notarization to the document renders it void and unenforceable against Ms. Benedict.  Even if the notarization itself was not required for execution, the misunderstanding and attempt to affix a fraudulent notarization is improper and constitutes unclean hands.  The doctrine of unclean hands will deny equitable relief "when the party seeking relief is guilty of fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities."  *Saudi Basic Indus. Corp. v. ExxonMobil Corp*., 401 F. Supp. 2d 383, 386 (D.N.J. 2005).  Affixing the notarization when the individual was not present to sign is fraud, and, now Plaintiff attempts to use this same document as the basis for restricting the rights of Ms. Benedict.

### B.  Plaintiff Will Not Suffer Irreparable Harm.

Plaintiff has not and cannot show that it has a likelihood of success on the merits.  "[T]he purpose of the restrictive covenants is to protect the goodwill of the franchisor; if the court did not grant the preliminary injunction, the good will of the franchisor would be harmed by the existence of a competing business at the same location." *Total Car Franchising v. Wilhovsky, No. CIV.A. 02-684 JWB, 2002 WL 34727053, at *10 (D.N.J. Mar. 28, 2002) (*interpreting *Jiffy Lube Int'l, Inc. v. Weiss Bros*., 834 F. Supp. 683 (D.N.J. 1993)). Thus, the court found that irreparable injury might result if the restrictive covenants in the license and franchise agreements were not enforced. *Id.* However, in *Jiffy Lube*, the finding of irreparable harm to the franchisor's good will was premised on a predicate finding that the covenant not to compete had been violated. *Id*. (citing *Grease Monkey International, Inc. v. Ralco Lubrication Services, Inc*., 24

F.Supp.2d 120, 125 (D.Mass.1998)).  In *Grease Monkey,* the District of Massachusetts found that the plaintiff had not established a likelihood of success on the merits as to its claim that the defendant was bound by a restrictive covenant, and therefore, could not make a showing of irreparable harm if the court did not enforce the restrictive covenant." *Id.*  As is the case here, GPI cannot show it will prevail on the merits and therefore, cannot establish that it would be irreparably harmed.  *Id.* (explaining that, "[i]n the case before this court, Plaintiff is not being prevented from enforcing the provisions of the Franchise Agreement but rather is seeking to impose upon Defendant a provision that does not apply to him.").

In addition, as indicated above, DGI or Ms. Benedict are no longer utilizing the Geese Police Proprietary Marks, and clients have been informed DGI is no longer operating or using the Geese Police Proprietary Marks (both by DGI and GPI).  Benedict Decl. para 18, 19, and 20; DEX 7.  In *Exec. Home Care Franchising LLC v. Marshall Health Corp*., the Court reviewed a case where the prior franchisee began operating a separate business in the same geographic area as Plaintiff Franchisor; however, the franchisee had stopped utilizing the trademarks of the franchisor. *Exec. Home Care Franchising LLC v. Marshall Health Corp*., No. CIV.A. 15-760 JLL, 2015 WL 1422133, at *5 (D.N.J. Mar. 26, 2015), *aff'd*, 642 F. App'x 181 (3d Cir. 2016). The Court found that there was not irreparable harm as the defendants represented to the Court that they were no longer using the plaintiff's trademarks in their new business, all of their existing clients have be expressly informed that defendants are no longer, in any way, associated with plaintiff and have provided said customers with a document expressing this notion.  *Id.* (explaining, "[t]herefore, based upon [d]efendants representations, the Court is satisfied that [d]efendants are no longer using nor creating a potential for confusion regarding [p]laintiff's [t]rademarks.). Again, in the present case, DGI is no longer utilizing any trademarks of GPI, at

all.  DGI removed all markings from its vehicles, removed the website, and have notified all of

its clients.  In addition, Geese Police sent a letter to all of DGI's customers informing them that

DGI was no longer a franchisee. DEX 7. As of March 31, 2018, DGI had notified all of its

clients and has stopped using the Geese Police marks.  Benedict Decl. para 20.

"'[T]o show irreparable harm, the plaintiff must demonstrate potential harm which cannot

be redressed by a legal remedy.' *Instant Air,* 882 F.2d at 801. Economic loss does not constitute

irreparable harm. *Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir.1994). "Loss of

potential business opportunities, profits, customers, or contracts is compensable by money

damages and does not constitute irreparable injury." *Apollo Tech. Corp. v. Centrosphere Indus.*

*Corp.,* 805 F.Supp. 1157, 1209 (D.N.J.1992) (*citing Instant Air,* 882 F.2d at 801; *Frank's GMC*

*Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir.1988); *In re Arthur*

*Treacher's Franchisee Litigation,* 689 F.2d 1137, 1141 (3d Cir.1982))." *Quoting  AV Sols., LLC*

*v. Keystone Enter. Servs., LLC*, No. CIV.A. 11-3503 JLL, 2011 WL.  In light of the

representations made by DGI and Ms. Benedict, Plaintiff cannot argue that there is an immediate

irreparable injury, other than their trademark claims, they are essentially asking for economic

loss.

### C.  Harm to DGI and Ms. Benedict Far Outweighs the Harm to Plaintiff

Because the trademark issues have been fully resolved, a preliminary injunction is not

warranted. Plaintiff is a franchisor with sixteen other franchisees across the United States.  Even

assuming arguendo Plaintiff could prevail in its claim, the only potential damages at issue are

royalty revenue during the pendency of the litigation (i.e. monetary damages). In comparison, the

damage resulting from an injunction would be extreme and prejudicial to Defendant.  DGI and

Ms. Benedict would lose everything, including the inability to conduct any business or maintain a livelihood.

**WHEREFORE**, based on the forgoing, Plaintiff respectfully requests this Court deny Plaintiff's application for motion to show cause pursuant to Fed. R. Civ. Pro. 65.

Respectfully submitted,

_s/Keith J. Miller_
Keith J. Miller, Esq.
ROBINSON MILLER LLC
One Newark Center, 19th Floor
Newark, NJ 07102
e-mail: kmiller@rwmlegal.com
tel: 973-690-5400 fax: 973-466-2761
_Counsel for Defendants_

_Of Counsel:_

Dirk McClanahan, Esq.
McClanahan & Powers PLLC
8133 Leesburg Pike, Suite 130
Vienna, VA 22182

CERTIFICATE OF SERVICE

I certify that on April 24, 2018 I served the Memorandum of Law in Opposition to Order to the Show Cause and Declaration of Cathy P. Benedict upon all counsel of record via the United States District Court's CM/ECF electronic filing system.

*s/Keith J. Miller*
Keith J. Miller