Lauren Adornetto Woods
BUCHANAN INGERSOLL & ROONEY PC
Incorporated in Pennsylvania
700 Alexander Park, Suite 300
Princeton, New Jersey, 08540
609-987-6800

Gretchen L. Jankowski (Admitted *Pro Hac Vice*)
BUCHANAN INGERSOLL & ROONEY PC
301 Grant Street, 20th Floor
Pittsburgh, Pennsylvania  15219
412-562-1417
Attorneys for Plaintiff, GPI, LLC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GPI, LLC,<br><br>    Plaintiff,<br><br> v.<br><br>DOGGONE GEESE, INC. AND CATHY P. BENEDICT<br><br>    Defendants. | Civil Action No. 3:18-cv-05122-FLW-TJB<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE PURSUANT TO FED. R. CIV. P. 65**<br><br>**MOTION HEARING DATE: MAY 22, 2018**<br><br>**ALL PARTIES SERVED BY ELECTRONIC SERVICE THROUGH ECF SYSTEM** |

**TABLE OF CONTENTS**

                                                                                            **Page**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ......................................................................................................... 1

    A. BENEDICT IS PROHIBITED FROM SELLING TRAINED DOGS FOR GEESE CONTROL .................................................................................. 1

    B. BENEDICT'S RESTRICTIONS HAVE NOT LAPSED ...................................... 4

        1. The Renewal Agreement............................................................... 4

        2. Non-Signatories are Bound........................................................... 5

    C. THE POST-TERMINATION OBLIGATIONS ARE ENFORCEABLE AND BLUE PENCILING IS UNNECESSARY...................................... 6

    D. NO HARDSHIP TO BENEDICT IS UNDUE ....................................... 7

    E. INJUNCTIVE RELIEF SHOULD BE GRANTED ............................... 9

    F. POSTING OF INJUNCTION BOND ................................................. 13

III. CONCLUSION.................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Am. Ins. Co. v.Wachovia Ins. Agency Inc.*,
    306 Fed. Appx. 727 (3d Cir. 2009) ..................................................................................... 11

*Athlete's Foot Marketing Assocs., Inc. v. Zell Investment, Inc.*,
    2000 WL 426186 (W.D. Pa. 2000) ..................................................................................... 10

*Athlete's Foot Mktg. Assocs., LLC v. F. Consulting, Inc.*,
    2:06-cv-03035, Bus. Franchise Guide (CCH), 2007 WL 9378875 (D.N.J.
    May 4, 2007) ......................................................................................................................... 6

*Bonus of America, Inc. v. Angel Falls Services, L.L.C.*,
    Civ. No. 10-2111, 2010 WL 2734218 (D. Minn. July 6, 2010) ............................................ 5

*Horizon Health Center v. Felicissiomo*,
    722 A.2d 611 (N.J. Super. App. Div. 1999) ......................................................................... 6

*Jackson Hewitt, Inc. v. Barnes*,
    Bus. Franchise Guide (CCH) ¶ 14,550 (D.N.J. 2011), 2011 WL 181431
    (D.N.J. Jan. 18, 2011) ........................................................................................................... 6

*Jiffy Lube Int'l v. Weiss Bros., Inc.*,
    834 F. Supp. 683 (D.N.J. 1993) .......................................................................................... 10

*Little Caesar Enterprises, Inc. v. Little Caesar's Va. Inc.*,
    Bus. Franchise Guide (CCH), ¶ 14,199 (E.D. Va. Aug. 27, 2009) ....................................... 5

*Maaco Enters., Inc. v. Bremner*,
    1998 WL 669936 (E.D. Pa. 1998) ...................................................................................... 10

*McCart v. H&R Block, Inc.*,
    470 N.E.2d 756 (App. Ct., 3d Dist. Ind. 1984) ..................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 65 ........................................................................................................................... 5

Fed. R. Civ. P. 65(d)(2) ................................................................................................................. 5

I.      **INTRODUCTION**

Defendant Cathy Benedict ("Benedict") has unconditionally admitted that since March 30, 2018, she is continuing to compete in her former Protected Territory. Instead of providing those services as a Geese Police franchisee, she is now providing those services under a new entity, Goose Rangers, LLC, which was formed on March 30, 2018. [ECF 15-1 at ¶22]. The Franchise Agreement protects against this very situation: a former franchisee operating under a new name in the same territory and providing the same services. Because Benedict is continuing to violate her contractual obligations under the Franchise Agreement, and will continue to do so absent Court intervention, Plaintiff submits that a preliminary injunction is warranted.

II.     **ARGUMENT**

A.      **BENEDICT IS PROHIBITED FROM SELLING TRAINED DOGS FOR GEESE CONTROL**

As the 2017 correspondence between Franchisor and Benedict makes clear, Franchisor demanded that Benedict stop selling dogs advertised as Geese Police trained. Benedict agreed, despite the fact that she continued to do so. Benedict's attempt to argue compliance because of the purported removal of "Geese Police" is a lawyer-crafted argument. As her advertisements reveal, Benedict was continuing to sell Border Collies (the same type of dogs used in her Franchised Business) for humane Canada goose control as the "Owner of Geese Police of VA." *See e.g.,* Declaration of Douglas Marcks, Exhibit 4 ("Marcks Declaration").

Noticeably absent from Benedict's Declaration is any mention of the other business that she ran: "Goosedogs for Sale." As Benedict's Facebook page reveals, she identifies that she has been self-employed from February 5, 2015 to the present with "Goosedogs For Sale." That Facebook page lists her as the only Team Member. *See* Marcks Declaration, Exh. 3. Defendants

argue that Benedict did not begin to train and advertise goose control dogs until 2017 and 2018 with Keepstone Farms, wholly ignoring Benedict's admission on her personal Facebook page that she has been employed by "Goosedogs For Sale" since February 5, 2015. [ECF, 15, pg. 9]. Moreover, a nationally certified goose control dog trainer was approached by Benedict in the spring of 2016. Benedict sought to purchase Border Collies that that she would train and sell for thousands of dollars. Benedict sought to have her activities kept secret, likely because she knew she was in violation of her Franchise Agreement. *See* Declaration of Rebecca Gibson at ¶ 8-15 ("Gibson Declaration") ("Benedict asked me not to tell anyone that I had sold any dogs to her.").

Notwithstanding the above, there is no question that the Franchise Agreement expressly prohibits the sale of goose control dogs. Sections 16.2 and 16.2.1 and 16.2.3 provide, in part as follows:

> 16.2  Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable, specialized training and confidential information, including, without limitation, information regarding the operational, sales, and promotional methods and techniques of Franchisor and the System.  Franchisee covenants that during the term of this Agreement, except as otherwise approved in writing by Franchisor, Franchisee shall not, either directly or indirectly, for itself: or through, on behalf of, or in conjunction with any person or legal entity:
>
>     16.2.1 Divert or attempt to divert any present or prospective business or customer of Franchisor or any other business operating under the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System;
>
>     16.2.3 Own, maintain, operate, engage in, be employed by, provide any assistance to, or have any interest in (as owner or otherwise) any business that: (a) **offers products or services which involve the inhabitation of property by, and control of, birds and waterfowl**; and (b) is, or is intended to be, located at or within:
>
>         16.2.3.1 the county or municipality in which the Approved Location is located; or

>>16.2.3.2  the Protected Territory; or
>
>>16.2.3.3  Location; or one hundred fifty (150) miles of the Approved Location; or
>
>>16.2.3.4 one hundred fifty (150) miles of any business operating under the Proprietary Marks.

[ECF 1-6, at pp. 29-31] (emphasis added).  Benedict's sale of Border Collies trained in the control of "birds and waterfowl" from the location of her former Geese Police franchise, while simultaneously operating the Franchised Business, violates the Franchise Agreement.  As Benedict has admitted that she has sold trained goose control dogs since prior to August 31, 2016, she has admitted that she violated the Franchise Agreement.  [ECF 15-1, ¶13.]

Defendants' argument that the termination of the Franchise Agreement was pretextual and improper, requires the Court to ignore Section 16.2.  As set forth above, Defendants agreed that during the term of the Franchise Agreement, they would not, directly or indirectly, divert or attempt to divert any present or prospective customer to any competitor, or own, operate or engage in any business that "offers products" (sale of trained goose control dogs) or "services" (training goose control dogs), which involve the control of birds and waterfowl. [ECF 1-6, at pp. 29-31].  Benedict's training and sale of goose control dogs is in direct violation of Section 16.2.  Further as the Declaration of Cindy Ranneberger ("Ranneberger Declaration") and the Marcks Declaration make clear, fellow franchisees believe that the sale of Border Collies trained for goose control is actual competition:

> Ranneberger Declaration:  If Benedict sells trained goose control dogs into my territory, she will be taking potential or existing clients from me because some property owners choose to purchase trained goose control dogs instead of contracting with a company like Geese Police.

3

> Marcks Declaration: If Benedict is permitted to continue to sell goose control dogs, there is nothing to keep her from selling goose control dogs to one or more of my clients so that they can avoid paying for my services.

*See* Ranneberger Declaration, ¶12; Marcks Declaration, ¶20.  The prospective and actual client base for the Franchised Business include those clients that want goose control; two of their choices are to purchase a goose trained dog or to purchases services using a goose trained dog. Benedict offered both in violation of her Franchise Agreement.

    B.    **BENEDICT'S RESTRICTIONS HAVE NOT LAPSED**

        1.    **The Renewal Agreement**

As the Court noted, Benedict's argument that she is not bound by the non-compete terms of her Franchise Agreement because she did not re-sign another Guarantee is not compelling. Benedict does not dispute that she signed the 2009 Guarantee.  Rather, Defendants conveniently ignore the 2014 renewal, at Benedict's request, of the 2009 Franchise Agreement for an additional five year term.  That renewal expressly states that the Franchise Agreement is being renewed "on the same terms and conditions" as the 2009 Franchise Agreement.  Exhibit C, which is part of the 2009 Franchise Agreement, was not excluded.[1]

---

[1] Benedict expressly admits that she did, in fact, sign the 2009 Guarantee. [ECF 15-1, ¶¶ 3, 27]. She attempts to void the document by suggesting that it was fraudulently notarized.  It is important to note that the notary did not complete the attestation or attest that she witnessed the document's execution. [ECF 15-1, p. 53].  Rather, she simply stamped the document.  Whether or not the document was notarized does not change Benedict's admission that she signed it. Defendants cite no case law for the contention that a notarial stamp on a document admittedly signed by Defendant, and absent an attestation, is fraudulent.  It is not.  Quite incomprehensibly, in the very same brief, Benedict admits that she purposefully, and with bad intent, did not sign a new Guarantee in 2014 (despite the fact that no new Guarantee was required to be signed), presumably so that she could carry out her intention to directly compete with Franchisor in circumvention of her Franchise Agreement.  [ECF 15-1 ¶¶ 3-4].

### 2. Non-Signatories are Bound

Notwithstanding Benedict's execution of Exhibit C, Benedict, as the President and Owner of the Franchisee, Doggone Geese, Inc., d/b/a Geese Police of VA ("Doggone Geese") is bound to the Franchise Agreement's post-termination obligations, including the non-competition covenant. Courts routinely enter injunctive relief against the franchisee business entity and its principals and owners. Rule 65 by its language expressly binds a Defendant, and its agents, servants, employees and all those persons "in active concert or participation with" them. Fed.R.Civ.P. 65(d)(2). Defendant Doggone Geese only can act through its principals and agents, and its principal is Benedict. It is preposterous for Benedict to argue that only Doggone Geese is bound to the post-termination covenants; therefore, as its principal she can cease operating Doggone Goose and simply form a different entity to conduct the very same business. *See e.g., Bonus of America, Inc. v. Angel Falls Services, L.L.C.,* Civ. No. 10-2111, 2010 WL 2734218, \*6 (D.Minn. July 6, 2010) (enjoining non-signatory business associate of franchisees bound by covenants not to compete with terminated franchise agreement from competition under the franchise agreement.); *McCart v. H&R Block, Inc.*, 470 N.E.2d 756 (App. Ct., 3d Dist. Ind. 1984) (granting injunction, including over non-signatory husband of franchisee who knowingly participated and aided former franchisee in violating her covenant not to compete.)[2]

In an unpublished opinion, Judge Cavanaugh of the New Jersey District Court tackled this question, enforcing a restrictive covenant in a franchise agreement against a true non-signatory. *Jackson Hewitt, Inc. v. Barnes*, Bus. Franchise Guide (CCH) ¶ 14,550 (D.N.J. 2011), 2011 WL 181431 (D.N.J. Jan. 18, 2011). The *Barnes* court upheld a covenant not to compete

---

[2] *See also, Little Caesar Enterprises, Inc. v. Little Caesar's Va. Inc.*, Bus. Franchise Guide (CCH), ¶ 14,199 (E.D. Va. Aug. 27, 2009) (enjoining non-signatory from operating a competing pizza restaurant).

and enjoined the franchisee and his non-signatory father who he planned to use to operate 15 tax-preparation businesses in competition with the Franchisor, and in circumvention of the covenant not to compete in his Franchise Agreement.  The court, relying upon *Horizon Health Center v. Felicissiomo,* 722 A.2d 611, 613 (N.J. Super. App. Div. 1999), held that "injunctions of this nature are generally broad enough to encompass non-parties, who are bound provided they have actual notice of its substance and contents. The reason is to avoid nullification of a decree by unnamed aiders and abettors who carry out the prohibited acts." *Barnes,* supra at *2.

## C.   THE POST-TERMINATION OBLIGATIONS ARE ENFORCEABLE AND BLUE PENCILING IS UNNECESSARY

Defendants' argument that the non-competition covenant is unenforceable based on various hypotheticals – none of which are supported by the facts submitted by Benedict in her Declaration – is unavailing.  Benedict admits that she is, in fact, operating in the exact same Protected Territory under a new legal entity, Goose Rangers, LLC, as she did when she was operating under the legal entity, Doggone Geese. [ECF 15-1 at ¶¶20-22].  A non-competition covenant applied to prohibit a former Franchised principal from operating the identical business, using the former franchisor's business model (and not the Marks) in the same Protected Territory is enforceable and not an unreasonable restriction.  *Athlete's Foot Mktg. Assocs., LLC v. F. Consulting, Inc.*, 2:06-cv-03035, Bus. Franchise Guide (CCH), 2007 WL 9378875, *13 (D.N.J. May 4, 2007) ("That enforcement of the covenant-not-to-compete would require defendant to either move, change its line of business or go out of business is not undue hardship.  If it were, no covenant-not-to-compete would ever be enforced.")

Moreover, the issue is not simply whether Benedict may sell trained dogs as Defendants argue – she certainly may in Leesburg, Virginia, or anywhere else in the world.  She may not, however, sell trained dogs for goose control, as this activity is part and parcel of the Franchised

Business.  The Franchised Business requires a franchisee to purchase Border Collies that have already been trained for goose control.  The services that franchisees provide, cannot be provided, without trained dogs for goose control.  To suggest that Benedict may sell trained dogs for goose control (as along as she does not service customers) turns both the letter and spirit of the post-termination restrictions on their head.  Given that Benedict has admitted that she is also attempting to service customers, belies Defendants attempts to frame the issue as just the sale of dogs.

### D.   NO HARDSHIP TO BENEDICT IS UNDUE

Per Benedict's Declaration, it appears that it was her intention when she renewed the Franchise Agreement in 2014 to ultimately compete against the Franchisor, whom she admits she had personal problems with. [ECF 15-1, ¶ 4].  Although legal arguments have been made as to why enforcement of the post-termination obligations on Benedict would "bankrupt Benedict and destroy DGI" (which Benedict admits is not operating), no facts have been presented as to any undue hardship in her Declaration.

In Defendants' attempt to argue that Benedict will have no source of income, they actually provide numerous activities that she may conduct without running afoul of her post-termination obligations.  Reading the post-termination restrictions as Defendants do demonstrates the ridiculousness of their position.  Benedict is barred from owning or working for a business that uses trained dogs to control geese and other birds and waterfowl.  Geese Police is not the only such business; there are others (franchised and non-franchised) that exist within the scope and territories of the non-competition covenant such as Feather Free Zone or Goose Masters.

As is clear from Keepstone Farm's website, Cathy Benedict's association with them concerns selling fully trained Goosedogs for geese control.

7

**Now Selling Fully Trained Goosedogs and Duck Demo Dogs!**

If you have Canada Goose problems, a goosedog may be the answer for you! Cathy Benedict has been in the goosedog business for almost 2 decades. She can give your dog a refresher course, teach it to swim, or sell you a fully trained goosedog. Contact her at 703-785-2803 or email **Cathy**.



**http://www.keepstonefarm.com/Livestock.html**

Benedict may sell dogs or any other animals that she wishes. She is permitted to use trained Border Collies, or other trained dogs, for the purpose of herding sheep or deer control. She may work for Keepstone Farm,³ provided she is not training or selling dogs for goose

---

³ Keepstone Farm identifies itself as an all season stock dog training facility, offering multiple services for herding dog owners and handlers for all breeds of stock dogs, puppies to adults, beginners to advanced level dogs, beginners to advanced level handlers. Additionally, Keepstone offers its facilities as a venue for other canine activities. Please contact trainer **Susan Rhoades**, an AKC and AHBA trial judge on fees for the services listed below.

Private Lessons     Practice Sessions

8

control.  She also is permitted to work for any business such as Walmart, Cabela's and Gander Mountain because these are not businesses engaged in the control of birds or waterfowl; that they sell hunting rifles, duck calls, turkey calls or other hunting equipment does not convert them into such businesses.

      **E.**     **<u>INJUNCTIVE RELIEF SHOULD BE GRANTED</u>**

While Benedict has stated that she disassociated, she continues to associate her personal social media with www.geesepoliceloudoun.com.  *See* Marcks Declaration at ¶14.  Plaintiff requests that the Court require Defendants to provide evidence that she has removed all Marks from her social media pages, and that Defendants be required to immediately return all Confidential Information and items bearing the Marks (such as apparel).[4]

Regardless of Benedict's alleged disassociation, injunctive relief is necessary to protect Franchisor from Benedict unfairly competing in the Protected Territory using the Franchised System (but not the Marks).  *See, e.g., Athlete's Foot Marketing Assocs.*, *Inc. v. Zell Investment, Inc.*, 2000 WL 426186 at *11 (W.D. Pa. 2000) (The covenant-not-to-compete is designed to prevent not only sales that might result from the prohibited competition, but primarily to prevent a disturbance in the relationship between Franchisor and its customer base, and the goodwill developed for the stores operated by Franchisor and its authorized franchisees; this disturbance

---

               Instinct Testing      Training
               Handling           Clinics
               Judging
               Staging Venue for Other Canine Field Events
http://www.keepstonefarm.com/About%20Keepstone.html.  The only goose control component is provided by Cathy Benedict.  http://www.keepstonefarm.com/Livestock.html

[4] Plaintiff has no objection to counsel of record retaining a copy for litigation purposes, provided that Defendants do not have access to any of the materials.

9

unascertainable and not capable of being fully compensated by money damages); *Maaco Enters., Inc. v. Bremner*, 1998 WL 669936 at *5 (E.D. Pa. 1998) (franchisee's operation of an automobile painting and repair shop at the site of their former Maaco franchise will cause Maaco irreparable injury because Maaco will have difficulty refranchising the franchisees' trading area, business will be diverted from Maaco's authorized franchisees, Maaco's relationships with its authorized franchisees and the integrity of the Maaco System will be impaired, and franchisee will be unjustly enriched by using the knowledge and experience gained from Maaco to serve former and potential customers of Maaco); *Jiffy Lube Int'l v. Weiss Bros., Inc.,* 834 F. Supp. 683, 691 (D.N.J. 1993) (Irreparable injury exists because "the purpose of the restrictive covenant in this setting is to protect the goodwill of the franchisor. Were we not to grant a preliminary injunction, the goodwill of the franchisor would be harmed by the existence of a competing service center at the very site of the former Jiffy Lube center").

There is no question that Benedict is competing with Franchisor using both her new company "Goose Rangers" and her old company "Goosedogs For Sale." *See* Marcks Declaration at ¶ 11. Indeed, on both Instagram and Facebook, Benedict posted the following photograph suggesting that she was using her dogs to control geese in violation of covenants not to compete as late as May 5, 2018 at 5:38 a.m.:



*See* https://www.facebook.com/pg/Goosedogs-For-Sale-we-can-fly-or-personally-deliver-your-dog-to-you-147060365956412/posts/?ref=page_internal; and https://www.instagram.com/goosedogsforsale/.

Defendants' failure to comply with their post-termination obligations, including the return of all trade secret and proprietary information, will cause Plaintiff further irreparable injury. *See e.g, Ace Am. Ins. Co. v.Wachovia Ins. Agency Inc.,* 306 Fed.Appx. 727, 732 (3d Cir. 2009) (noting that "disclosure of confidential information or trade secrets may constitute irreparable harm"). Moreover, the type of surreptitious competition being employed by Benedict is precisely the kind of competition that Sections 15 and 16 of the Franchise Agreement seek to protect Franchisor against. Defendants expressly acknowledged and agreed to Plaintiff's right to obtain temporary and permanent injunctive relief to enforce Defendants' noncompetition obligations. [ECF 1-6 ¶ 25.3.3 and 25.9.][5] Other franchisees in the GPI system have expressed

---

[5] The Court has indicated that Section 25 of the Franchise Agreement requires that after a decision on the motion for injunctive relief, the matter would go to binding arbitration. After

fear that Benedict's continued competition using the Franchisor's System will allow her to retake control of customer accounts and territory they purchased from her years ago.

> Ranneberger Declaration: If Benedict is permitted to operate her new company, I worry that Benedict will go into direct competition with me, and will try to badmouth my business or GPI in order to retake my clients that she knew from twelve (12) years ago. When she was a franchisee, Benedict had a history of not staying in her own territory.
>
> Marcks Declaration: If Benedict is permitted to continue operating a competing goose control business in my territory, there is nothing to stop her from going back to the accounts that I purchased from her, and underbidding me. Benedict knows the clients, the contracts, how we price our services and specifically how we manage geese on properties.
>
> As a franchisee, Benedict traveled outside of her territory on more than one occasion to service contracts. Benedict will not stay in a restricted territory as Goose Rangers when she did not do so when she was a Geese Police franchisee.
>
> I am left wondering why I purchased a territory from her if she can just come back and take back what I purchased from her.

*See* Ranneberger Declaration at ¶10; Marcks Declaration at ¶¶ 17-19.

As these franchisees make clear, an injunction is necessary in this instance to protect the goodwill of the Franchisor which would be harmed by the existence of a competing goose control service operated by Benedict in the Protected Territory.

---

further review of the Franchise Agreement, Plaintiff has determined that Section 25 sets forth certain "Non-Mediation" matters to be determined by a NJ court of competent jurisdiction. [ECF 1-6, ¶ 25.3]. Those matters include suits over the use of the Marks, suits to "enforce the in-term and post-term noncompetition agreements" and "actions by the franchisor for the collection of amounts due from Franchisee." As the current Complaint encompasses claims for all three Non-Mediation carve-outs, Plaintiff believes that all three matters, to the extent they survive a decision on the request for injunctive relief, would remain under the jurisdiction of this Court. *Id.* at ¶ 25.9.

### F. POSTING OF INJUNCTION BOND

Recognizing that a preliminary injunction do not become effective until a bond is posted, Franchisor submits that an appropriate bond amount would be the Gross Sales of Defendants (less the 6% monthly royalty amount owed to the Franchisor). Defendants' average Gross Sales during the time period from May through December have been $103,608.92 with expected net revenues (revenue less royalties less operating expenses) of $19,400.00. Therefore, Franchisor submits that an injunction bond in the amount of $25,000.00 would be appropriate as it is expected that this matter should be fully resolved in the next ten months, and this bond amount the represents any potential loss to Defendants.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Franchisor respectfully request that the Court grant a preliminary injunction against Defendants.

*s/ Lauren Adornetto Woods*
Lauren Adornetto Woods
Buchanan Ingersoll & Rooney PC
Incorporated in Pennsylvania
700 Alexander Park, Suite 300
Princeton, NJ 08540
(609) 987-6813
Attorneys for Plaintiff, GPI, LLC